UNITED STATES of America

v.

**William D. HENDERSON, Appellant.**

**No. 23733.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 29, 1970.

Decided Nov. 18, 1970.

Mr. Lee M. Modjeska, Washington, D. C. (appointed by this Court) for appellant.

Mr. Julius A. Johnson, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.   Mr. John Ellsworth Stein, Asst. U. S. Atty., also entered on appearance for appellee.

Before McGOWAN and LEVENTHAL, Circuit Judges, and JOHNSON, Chief Judge, U.S. District Court for the Middle District of Alabama.*

9.  399 U.S., at 164, 90 S.Ct., at 1938.

* Sitting by designation pursuant to 28 U.S.C. § 292(c).

532

PER CURIAM:

This is an appeal from a judgment entered following a conviction for grand larceny (22 D.C.Code § 2201) and burglary in the second degree (22 D.C.Code § 1801(b), Supp. II 1968). Appellant was sentenced to two to nine years imprisonment on each conviction, the sentences imposed to run concurrently.

■ We have no doubt that the conviction for burglary II should be affirmed. Appellant raises a claim of double jeopardy. A previous trial resulted in a mistrial due to conduct of the prosecutor in announcing in the presence of the jury that he was calling appellant's mother as a rebuttal witness. Following her subsequent non-appearance, the trial judge sua sponte rebuked the prosecutor and declared he did not think the prejudice could be dissipated by an instruction to the jury. Defense counsel moved for and obtained a mistrial. Counsel now argues that in context jeopardy attached because in practical effect this course was thrust on and not initiated by defense counsel. We see no sound legal objection. Defense counsel made a strategic determination of strategy to seek a new trial.[1] The first trial was a nullity, determining neither guilt nor innocence, and the Government, like appellant, was still entitled to a day in court.

■ It is argued that there was another impropriety at the second trial because the prosecutor referred to appellant's possession of a gun at the time of the housebreaking. At the first trial appellant testified he had a gun—to explain why he had fled at the sight of police. There had been no indication to the court or prosecutor that this point might present an issue at the second trial. At the second trial the prosecutor referred to the gun at voir dire and in the opening statement. Defense counsel objected that the government had no admissible proof to connect the gun to appellant and hence could not offer it in evidence. He said he felt entitled to a mistrial or a "very strong instruction." The judge told the jury that the prosecutor had made "some allusion to a gun," and instructed them: "The gun is out. Forget it. It isn't in evidence. You'll hear nothing further about it." Appellant plainly has no ground for objection concerning this short, emphatic curative instruction. What counsel complains of is that subsequently the prosecutor did make reference to the gun. But that reference came not in the prosecution's direct case, but in impeachment of the defendant who testified at the second trial that his flight at the sight of police was because he was afraid of getting into trouble, since he was then on bond on another charge. In that context, the Government brought out in impeachment, as a contradiction, appellant's statement at the earlier trial that he had fled because he had a gun. We see no error.

We come to a more troublesome issue, the adequacy of proof of grand larceny, that the property taken had a value of $100 or more. The Government's proof was solely the testimony of the victim identifying the articles taken and their cost, which totalled $195.[2] Two items had been purchased a week before the

---

1. While it is not necessary to our decision we observe that this enabled defendant to be tried alone, without the presence of a co-defendant who had decided to plead guilty.

2. She saw and identified numerous items that were missing from her apartment: the American Tourister suitcase (a purchase a week before the instant incident for $37.50, Tr. 131–132); a record player (a purchase two and a half years before the incident for about $40) with two Wagner records (a gift worth together

about $10, Tr. 135). Items in the suitcase included a transistor radio (a purchase a year before for about $30, Tr. 136, 144, 156); an electric shaver and case (a purchase a week before the incident for about $17, Tr. 139, 144); a kodak camera and case (with batteries and bulbs) (purchase four years or more before for approximately $15, Tr. 141); a travel alarm clock (purchased a year and a half before for about $15, Tr. 145–146); assorted clothing and lingerie (valued at about $25), a purse (about $7.50, Tr. 153–154) and two paperback books

incident,—a suitcase for $37.50, and an electric shaver for $17. The other items had been bought a year or more earlier and there was no testimony of condition or value at the time of the burglary.

The question arises in view of this court's decision in United States v. Thweatt, 140 U.S.App.D.C. 120, 433 F.2d 1226 (1970), where not dissimilar proof was held inadequate to establish value in excess of $100.[3] That case calls for rigor in proof of $100 value. Certainly the issue of value is not an insignificant one. The criterion as to when larceny becomes a felony, with exposure to ten years imprisonment, has been retained at $100 since 1953, when the amount was changed from $50. Issues of value have not been eased during the past twenty years by a substantial rise in price levels, which may operate to transform larceny of the same article when new from a misdemeanor to a felony, and a concurrence of changes in production that both reduce usable service life, for many articles, and increase the rate of obsolescence in the face of new styles and improvements.

■ But we have no need to examine the *Thweatt* rule or define its contours or application to the case. For the case before us is one of concurrent sentences. In United States v. Hooper, 139 U.S. App.D.C. 171, 432 F.2d 604 (1970), we noted that in case of concurrent sentences it was appropriate for an appellate court to reverse a judgment as to one of the sentences, if its validity was beset by substantial doubt, without devoting its resources to resolution of the underlying question, "because of the overall interest of justice in effective disposition of appellate dockets, at least where there is neither injustice done defendant nor a need of the government overridden." (at 606) Applying this principle, we reverse the judgment for a concurrent sentence for grand larceny, and remand to the District Court for entry of a concurrent sentence on petit larceny.

So ordered.

(Tr. 147–148). Miss Fromme also had in her apartment numerous coins, some of which she had counted the night before for coin wrappers (for example, she had rolled 3 rolls of pennies and counted 29 nickels, Tr. 150, 166). Other coins she had separated by denomination for various purposes (for example, quarters and dimes for laundry) (Tr. 166–167). In addition she had an interest in old or unusual coins which she collected herself and sometimes received from friends aware of her interest (Tr. 149). Three such coins, missing from her apartment and taken from appellant after his arrest (Tr. 109–110, 186–187), were identified by Miss Fromme as a 1936 quarter, a 1943 silver colored penny, and a Canadian Centennial penny (Tr. 149–153).

3. Thweatt was indicted for stealing on or about March 14, 1968, property "of the value of about $244.50, consisting of one typewriter of the value of $50.00, eight sweaters of the value of $60.00, three shirts of the value of $10.00, one suit of the value of $20.00, two jackets and a vest of the value of $45.00, one jewelry box of the value of $10.00, jewelry of the value of $40.00, and $9.50 in United States Postage Stamps."

The victim testified (Tr. 126, ff.) as follows concerning the dates and cost of purchase of articles taken from his apartment: typewriter in 1962 for $75; green suit in 1967 for $50; grey tweed jacket in 1964 for $38; the grey suit in 1965 for $50; slacks in 1966 for $12; 4 dress shirts in 1967 for $4 each; 8 sweaters bought at various times during 1965–1968 for an average of $12–$15 each. Other items taken included: postage stamps worth $9.50; an imitation leather jewelry box, containing cuff links and jewelry, all acquired by gift from 1962–1968, two items being sterling silver. He estimated their value at $10 or $15 the set, but objection to this testimony of value was sustained.