UNITED STATES of America

v.

**George Christopher BRODERICK, Defendant.**

**No. 76–314–Cr–JLK.**

United States District Court, S. D. Florida, Miami Division.

Jan. 7, 1977.

Rebekah J. Poston, Asst. U. S. Atty., Miami, Fla., for plaintiff.

Peter D. Aiken, Fort Lauderdale, Fla., for defendant.

## MEMORANDUM OPINION

JAMES LAWRENCE KING, District Judge.

The defendant has moved the court to dismiss the indictment against him on the grounds that the mistrial in his first trial was occasioned by prosecutorial over-reaching and thus a second trial is barred by the double jeopardy clause of the Fifth Amendment to the United States Constitution. For reasons to follow, the court finds that the motion is correct and should be granted.

The defendant was charged in an eight count indictment alleging violations of 8 U.S.C. Section 1324(a)(2).[1] The indictment charged the defendant with attempting to transport eight Hatians citizens knowing that they had illegally entered the United States.

The defendant was brought to jury trial before this court on October 27, 1976. Out of the presence of the jury and prior to the presentation of evidence, the defense asked for a ruling on a potentially troublesome hearsay problem and requested the prosecutor not to elicit testimony of a conversation between the Hatians prior to their arrival in the United States. Allegedly the Hatians were told that someone would pick them up after they arrived by plane in the United States. Defense counsel strongly contended that this statement was inadmissible hearsay and highly prejudicial. The

---

1. 8 U.S.C. § 1324(a)(2): Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—

   (2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law;

any alien, including an alien crewman, not duly admitted by an immigration officer or not law-fully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $2,000 or by imprisonment for a term not exceeding five years, or both, for each alien in respect to whom any violation of this subsection occurs: *Provided, however,* That for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring.

prosecutor stated that she had no knowledge of the statement and that she would not go into it. The court ratified the prosecutor's agreement not to elicit the statement.[2]

In the government's opening statement, the prosecutor said that testimony from the aliens would establish that the pilot had told the Hatians as they were leaving the plane to get into a truck. Defense counsel immediately moved for a mistrial on the grounds that it was apparently now the prosecutor's intent to offer the pilot's hearsay testimony into evidence. The court denied the motion for a mistrial because the prosecutor represented that the statement was made in the presence of the defendant and was not, therefore, hearsay.[3]

2. MR. AIKEN: I just have one minor matter I wanted to mention to the court before we proceed into the taking of testimony, and I just wanted to caution the government so I don't have to try the case twice; caution the government not to elicit a certain hearsay statement for the aliens. It is my understanding of the facts that the aliens at the time they left wherever they left were told by someone who is unidentified at this point that someone would pick them up on this end. That statement is hearsay and I don't want the aliens blurting it out, because it would become a critical issue in this case.
MS. POSTON: Someone would pick them up here in the States?
MR. AIKEN: Yes.
MS. POSTON: I have no knowledge of that.
MR. AIKEN: Okay. Well, I do not want that statement being elicited or that being blurted out.
MS. POSTON: I will not on my behalf.
THE COURT: Okay, fine.

3. MS. POSTON: Further testimony will show from the aliens, themselves, that upon arrival at Executive Airport they were instructed by the pilot to leave the plane and get into a truck, that they were further assisted by the defendant Chris Broderick in leaving the plane and in fact he carried their luggage for them and told them to get into the truck. . . .
THE COURT: Mr. Aiken.
MR. AIKEN: May I approach the bench, Your Honor?
THE COURT: Yes.
MR. AIKEN: Your Honor, I would assume that from counsel's opening remarks that she intends to offer the pilot's testimony into evidence. If she does intend to offer his testimony and she so stated that in her opening statement and it is in the record, I would move for a mistrial on the grounds that she has now in her

In the second day of trial, the prosecutor, without requesting a bench conference or giving any indication of her intent to do so, elicited the hearsay statement from the last government witness to testify. A bench conference ensued at which defense counsel objected to the statement and moved for a mistrial. When questioned by the court as to why she asked the question after she stated that she would not, the prosecutor said that she had done some research and had concluded that the statement was "qualified hearsay." After admonishing the prosecutor for not requesting a bench conference outside the presence of the jury for a rehearing on the issue of the admissibility of the statement, the court sustained the objection and granted the defendant's motion for a mistrial.[4]

opening statement mentioned this hearsay testimony that the pilot told the aliens to get off the plane and get into the truck, and this would be highly prejudicial in relation to my client and I assume by the opening statement that she does in fact have testimony of the pilot. If she does, I would move for a mistrial and renew it at the conclusion of the presentment of the evidence even if she has not due to the fact that she has mentioned it in her opening statement.
MS. POSTON: First of all, I do not have the pilot's statement. It is from the aliens, their testimony, that they represented that to me that the defendant was standing by there and helped them get off.
THE COURT: The motion is denied without prejudice to renew it at a later time in the trial.

4. Q. (By Ms. Poston) Can you tell me what happened, if anything, after the plane landed?
A. After the plane landed, I went to the truck, that's all.
Q. Did anyone instruct you to go to the truck?
A. Yes.
Q. Who told you to get into the truck?
A. The pilot.
MR. AIKEN: Excuse me. May I approach the bench?
THE COURT: Yes.
(Bench conference)
THE COURT: Sustained, it is hearsay.
MR. AIKEN: If the Court recalls, Your Honor, this was one of the things that I brought up prior to the trial. That statement, I think is incriminatory as it relates to my client. It was definitely elicited intentionally by the prosecution after a warning that it was hearsay. It becomes important, because it would indicate the truck was there waiting specifically for that purpose. I would again move for a mistrial on the grounds that I previously mentioned and—

The issue presented by defendant's motion to dismiss is whether the double jeopardy clause of the Fifth Amendment would be violated by a retrial of defendant after the first trial ended in a mistrial granted at defendant's request. The exact issue has been recently addressed by the United States Fifth Circuit Court of Appeals in *United States v. Kessler,* 530 F.2d 1246 (5th Cir. 1976). In that opinion, after surveying the relevant Supreme Court decisions, the court concluded,

> [u]nder ordinary circumstances, a defendant's request for a mistrial removes any constitutional barrier to retrial. * * * But the Supreme Court recognizes that there may be exceptions to that rule— rare cases involving circumstances which are "attributable to prosecutorial * * overreaching," * * * . Where "prosecutorial overreaching" exists, a defendant's mistrial request does not remove the constitutional double jeopardy barrier to a retrial. In such a case, the mere fact that the defendant requested a mistrial is not controlling. * * * Thus, a stringent analysis of the prosecutor's conduct, considering the totality of the circumstances prior to the mistrial, to determine

if there was "prosecutorial overreaching" is our inquiry. If "prosecutorial overreaching" is found, a second trial is barred by the Double Jeopardy Clause notwithstanding the fact that the defendants requested the mistrial. * * * To find "prosecutorial overreaching," the Government must have, through *"gross negligence or intentional misconduct,"* caused aggravated circumstances to develop which *"seriously prejudice[d] a defendant"* causing him to *"reasonably conclude that a continuation of the tainted proceeding would result in a conviction."* *Id.,* at 1255, 1256. *citations omitted,* (emphasis added.)

The court finds that the "prosecutorial overreaching", defined in *Kessler,* occurred in this case. Clearly, the hearsay statement which the prosecutor elicited despite her agreement not to do so, "caused aggravated circumstances to develop which 'seriously prejudice[d] [the] defendant causing him to 'reasonably conclude that a continuation of the tainted proceeding would result in a conviction.'" *Id.* The statement identified the defendant's truck as the vehicle waiting for the Hatians at the airport and indicated the defendant was expecting a planeload of

MS. POSTON: It is the government's contention that it qualified the hearsay exception as to the pilot. Anything that the pilot said to the witness is not coming in for the truth but for the fact that it was uttered to establish the state of mind of the defendant in hearing these particular things, and the testimony—

THE COURT: The defendant did not hear it.

MR. AIKEN: One witness testified that the driver of the truck was not—

THE COURT: Are you suggesting that the defendant heard that statement made by the pilot?

MS. POSTON: I am suggesting that I don't know whether or not he heard him say that or not, but I am saying that what was uttered by the pilot is an exception to the hearsay because—

THE COURT: No, no. It is absolutely hearsay.

MR. AIKEN: Your Honor, it is highly prejudicial. I brought it up in advance.

THE COURT: If you wanted to get it into evidence under some theory of it not being offered for the truth, but just whatever that theory is, it should have been brought up outside the presence of the jury. I will grant the motion for a mistrial. He brought it up that if you were going to try to do it that he was going

to move for a mistrial, and you said that you would not, and then you did it. I don't know why you did bring it up.

MS. POSTON: I did some research on it and it is qualified hearsay—

THE COURT: You should have brought that up this morning before the jury was brought in and we could have taken it up and got a ruling from the court. Now it is too late, and the answer, I think I agree with counsel that it would indicate that the pilot was expecting the truck. It is highly helpful to the government, but unless they can prove with competent evidence, it is not proper to bring it into this case. I don't wish to hamper you, but it would be that the pilot was expecting the truck to be there, and you said that you were not offering it for that purpose, that you were offering it for the purpose of something that I am not sure—

MS. POSTON: Just the fact that the statement was mentioned that he told him to get into the truck. It is not offered for the truth of the statement, but only to show—

THE COURT: All right. You are moving for a mistrial?'

MR. AIKEN: Yes, Your Honor.

THE COURT: Granted.

illegal aliens. The statement directly contradicted the defense that the defendant did not know that the people he was giving a ride to were illegal aliens, and that he was there only to pick up farm machinery parts in his truck.

The last element in the *Kessler* test, that gross negligence or intentional misconduct by the government must trigger the mistrial, is also present in this case. The prosecutor's conduct involved both intentional misconduct and gross negligence. She deliberately elicited the statement, even though she had been twice cautioned not to do so because of its prejudicial and hearsay nature. Furthermore, she had agreed not to elicit it and the trial judge ratified this agreement. Thus the prosecutor triggered the mistrial through intentional misconduct. The prosecutor says that through over night research, she became convinced that the statement was admissible in evidence. If this is true, the problem could have been entirely avoided by arguing her position again and obtaining a ruling from the court. She chose instead to deliberately ask the witness the prohibited question in the presence of the jury. In so doing the prosecutor invited the mistrial.

The Constitution and laws of the United States bars the further prosecution of the defendant under circumstances of prosecutorial misconduct such as are present in this case.