**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert W. CROUCH and Albert Kudelka, Jr., Defendants-Appellants.**

**No. 76–2361.**

United States Court of Appeals, Fifth Circuit.

Feb. 6, 1978.

Rehearing and Rehearing En Banc Denied March 9, 1978.

---

Dick DeGuerin, Joe J. Newman, Houston, Tex., for defendants-appellants.

James R. Gough, U. S. Atty., Anna E. Stool, Carl Walker, Jr., Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

This is a double jeopardy case. Defendants were tried in district court on a fifteen count indictment alleging various firearms related offenses.[1] After the jury had been sworn and the government had presented its case, the trial judge declared a mistrial. The defendants then filed pleas of former jeopardy alleging that the declaration of mistrial was *sua sponte* and not supported by "manifest necessity". *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).[2] The district judge denied the

---

1. Conspiring to make false statements with respect to information required to be kept by firearms dealers in violation of 18 U.S.C. §§ 371 and 924(a) (Count I); substantive counts of making false statements in firearms records in violation of 18 U.S.C. §§ 924(a) and 2 (Count II–XII); conspiring to obstruct justice in violation of 18 U.S.C. §§ 371 and 1510 (Count XIII); and obstruction of justice in violation of 18 U.S.C. § 1510 (Counts XIV and XV).

2. This standard has been consistently followed for over 150 years. *See Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 1(

motions, declaring that the mistrial was granted in response to the defendants' motions for mistrial made during the trial and not made *sua sponte*. The defendants took a direct appeal from this ruling. A panel of this court relying on *United States v. Bailey*, 512 F.2d 833 (5 Cir. 1975), dismissed the direct appeal for lack of finality under 28 U.S.C. § 1291. In the meantime, the Supreme Court in *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) decided that appeals such as the present appeal are final judgments within the meaning of 28 U.S.C. § 1291. The Supreme Court applying *Abney* has directed this court to reach the merits of the present case. *Crouch v. United States*, 432 U.S. 903, 97 S.Ct. 2945, 53 L.Ed.2d 1075 (1977).

## I.

■ The events at the defendants' trial as described by the trial judge in his memorandum opinion are as follows:

Three motions for mistrial were made during the course of the trial. The first occurred on the morning of February 19, 1976, during the testimony of Fred Beck, a former employee of defendant Crouch. Before Beck was called, Crouch's counsel approached the bench to state that the prosecution had agreed that evidence relating to a different case filed in the Houston Division of this District would not be entered into evidence. The prosecutor did not expressly confirm or deny this statement. The Court did not approve or disapprove the agreement, stating merely that it would see how the case developed. Beck testified that after he had left Crouch's employment he discov-

ered that Crouch wished to "get rid of him", and that, as a result, he sought protection from the Bureau of Alcohol, Tobacco and Firearms, which was investigating the case. When asked by the prosecutor whether he was given money by the ATF as a result of seeking their protection, Crouch's attorney objected on the ground that the question was leading and suggestive. The Court sustained the objection and directed the prosecutor to ask the witness only what was said. When the prosecutor asked how the information came to him, the witness replied that ATF agents allowed him to listen to a tape recording of someone conversing with Crouch. Thus, in substance, Beck testified that he learned that Crouch wanted to kill him by listening to a tape of a conversation between Crouch and a third party that was played for him by federal agents.

The jury was excused, and Crouch's counsel objected on three grounds: (1) that the statement was hearsay; (2) that the recording was obtained in violation of *Massiah v. United States*, 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246] (1964); and (3) that the elicitation of the statement violated the agreement between counsel because the tape recording pertained solely to the Houston case. Accordingly, Crouch's counsel moved in the alternative to strike and for the declaration of a mistrial. Counsel for appellant Kudelka adopted the motion for mistrial. The court, after a lengthy inquiry, granted the motion to strike, but denied the motion for mistrial. The jury was recalled and Crouch's counsel reurged both his motion to strike and for mistrial in their presence. The Court again denied the

L.Ed.2d 100 (1963); *Gori v. United States*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1948); *Keerl v. State of Montana*, 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734 (1909); *Logan v. United States*, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892); *Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891); *United States v. Glover*, 506 F.2d 291 (2 Cir. 1974); *Whitfield v. Warden of the Maryland House of Corrections*, 486 F.2d 1118 (4 Cir. 1973); *United States ex rel. Russo v. Supe-*

*rior Court of New Jersey*, 483 F.2d 7 (3 Cir.), cert. denied, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973); *Grogan v. United States*, 394 F.2d 287 (5 Cir. 1967), cert. denied, 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 100 (1968); *Howard v. United States*, 372 F.2d 294 (9 Cir. 1967); *Tolan v. United States*, 370 F.2d 799 (9 Cir. 1967); *Rothaus v. United States*, 319 F.2d 528 (5 Cir. 1963); *Gilmore v. United States*, 264 F.2d 44 (5 Cir.), cert. denied, 359 U.S. 994, 79 S.Ct. 1126, 3 L.Ed.2d 982 (1959).

motion for mistrial, struck the question and Beck's answer from the record and instructed the jury not to consider them for any purpose.

The second and third motions for mistrial occurred during the direct examination of Special Agent Michael Taylor, the ATF agent in charge of the investigation. Taylor testified that he arrested defendant Kudelka in August 1974, advised him of his constitutional rights, and had a conversation with him. Taylor then stated that he had asked Kudelka whether he would make a statement. The prosecutor asked what Kudelka's response was, and Taylor answered that Kudelka had said that he had an agreement with Croch whereby he, Kudelka, would "stick to his story" and that in return Crouch would take care of him, pay all of his legal fees, and see that he wound up owning the pawn shop in Galveston. For that reason, Taylor stated that Kudelka chose not to make any further statement. Out of the presence of the jury, Crouch's counsel stated that he was surprised by Agent Taylor's testimony because the government had represented that it had tendered to defendants all statements made by them while they were in custody. The Court ruled that the statement would be stricken as the government had a duty to disclose and had failed to do so. Counsel for both defendants then moved for a mistrial on the ground that the statement was so highly prejudicial that no instruction would remove its impact from the minds of the jury. The Court overruled both motions. Although the Court struck Taylor's testimony as to the agreement and directed the jury to disregard it, Crouch's counsel subsequently cross-examined Taylor with respect to it and expressly withdrew his objection. Kudel-

ka's counsel, however, did not withdraw his objection.[3] . . .

As the direct examination of Taylor continued, the prosecutor questioned him about the arrest of defendant Crouch. Taylor stated that he had arrested Crouch in November of 1973 and had told him why he was being arrested and of his constitutional rights. The prosecutor then asked whether Crouch made any statement and Taylor replied that he did not. For the third time, Crouch's counsel moved for a mistrial on the ground that the government had impermissibly shown that defendant Crouch exercised his Fifth Amendment right to remain silent. Counsel did not move to strike, and the Court denied the motion for mistrial.

On Tuesday, February 24, the trial judge held an in-chambers hearing in which he announced his intention of granting a two-week adjournment because of personal reasons. He subsequently stated in open court that the case would be continued until March 9. However, on March 8 the trial judge declared a mistrial, the defendants immediately objected, and the judge held another in-chambers conference.[4] The judge denied defendants' plea of former jeopardy on April 20 and issued a memorandum opinion a week later.

## II.

The starting point in our analysis is the fundamental disagreement between the defendants and the trial judge concerning the reason for the declaration of mistrial. The defendants strenuously insist that the trial judge aborted the trial for personal reasons and later used the mistrial motions made at trial as an excuse for the declaration of mistrial. The defendants point to

---

3. Early in the trial, defense counsel informed the trial court that objections, motions and other positions taken by one defense counsel should be deemed applicable to both defense counsel unless clearly stated otherwise. The defendants claim that this position was acquiesced in by the trial judge. The trial judge disagrees as his memorandum opinion states that he was of the view that Kudelka's counsel

did not withdraw his mistrial motion. While we find it unnecessary to decide this question, we note, however, that the better practice is for the trial judge to either explicitly recognize such agreements when tendered or explicitly refuse to give his imprimatur to such agreements.

4. No record was made of this conference.

the action of the trial judge in adjourning the trial for admittedly personal reasons.[5] The defendants then ask this court to make the inference that the subsequent declaration of mistrial was also made for personal reasons. The trial judge in his memorandum opinion stated that the mistrial was granted pursuant to the defendants' requests. We hold that the trial judge's statement of his motivation in granting the mistrial is dispositive on the issue.

■ Just as courts will not review the motives of a legislature in enacting a law, *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 3 L.Ed. 162 (1810); *United States v. Darby*, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941); *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964), this court will not review the mental processes of a trial judge. A judge's statement of his mental processes is absolutely unreviewable. This court has no means of observing mental process. In *United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941), Mr. Justice Frankfurter stated the rule we follow today. "We have explicitly held in this very litigation that 'it was not the function of the court to probe the mental processes of the Secretary' [of Agriculture]. [*Morgan v. U. S.*] 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129 (1938). Just as a judge cannot be subjected to such a scrutiny, . . . so the integrity of the administrative process must be equally respected." *Cf. Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The trial judge's statement of his mental process is so impervious to attack that even if he were to come forward today and declare that his memorandum misstated his reasons for the mis-

trial, we could not consider his explanation. *Fayerweather v. Ritch*, 195 U.S. 276, 305, 25 S.Ct. 58, 49 L.Ed. 193 (1904). *See also Hassenflu v. Pyke*, 491 F.2d 1094–95 (5 Cir. 1974), "It is inappropriate . . . to base an appellate opinion on assertions dehors the record."

A similar claim was made by the defendant in *United States v. Pappas*, 445 F.2d 1194 (3 Cir.), *cert. denied sub nom., Mischlich v. United States*, 404 U.S. 984, 92 S.Ct. 449, 10 L.Ed.2d 368 (1971). In *Pappas* defense counsel made a mistrial motion which the trial judge denied. The next day the trial judge stated that after reflection he decided to abort the trial for the reasons urged by the defendant. The defendant urged, as defendants Crouch and Kudelka contend here, that the mistrial was not granted in response to the motion for mistrial but was in fact granted *sua sponte*. The Third Circuit denied this claim stating:

> Here, however, the record compels the conclusion that the trial judge declared a mistrial solely in response to the defendant's request, although a day after the request had been made, and that the [defendant's] interest was the exclusive motivation underlying the declaration of a mistrial. Accordingly, a second trial of [the defendant] was not barred by the double jeopardy clause.

*Id.* at 1200.

### III.

■ The question then arises whether consistently with the double jeopardy provisions of the fifth amendment the defendants may be tried again following the granting of their motions for mistrial. We hold, as many others courts have held,[6] that

---

5. The trial judge stated in open court:
 Ladies and Gentlemen of the Jury, because of some personal matters, I am going to have to adjourn this case for two weeks.

6. *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80, 91 S.Ct. 547, 27 L.Ed.2d 543 (1977); *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *United States v. Tateo*, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); *United States v. Kennedy*, 548 F.2d 608 (5 Cir.

1977); *United States v. Kessler*, 530 F.2d 1246 (5 Cir. 1976); *United States v. Wilson*, 534 F.2d 76 (6 Cir. 1976); *United States v. White*, 524 F.2d 1249 (5 Cir. 1975); *United States v. DiSilvio*, 520 F.2d 247 (3 Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975); *United States v. Jamison*, 164 U.S.App.D.C. 300, 505 F.2d 407 (1974); *United States v. Beasley*, 479 F.2d 1124 (5 Cir.), *cert. denied*, 414 U.S. 924, 94 S.Ct. 252, 38 L.Ed.2d 158 (1973);

the defendants may be retried unless the mistrial motion was prompted by error "motivated by bad faith or undertaken to harass or prejudice." *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). In *Lee v. United States*, 432 U.S. 23, 32, 97 S.Ct. 2141, 2147, 53 L.Ed.2d 80, 88–89 (1977) the Court explicitly recognized that a defendant's motion for mistrial ordinarily removes any bar to retrial:

> Writing for the Court [in *United States v. Dinitz, supra*], Mr. Justice Stewart reiterated the rule that "where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error.
>
> . . . . .
>
> Where the defendant, by requesting a mistrial, exercised his choice in favor of terminating the trial the Double Jeopardy Clause generally would not stand in the way of reprosecution. Only if the underlying error was "motivated by bad faith or undertaken to harass or prejudice," *id.*, 424 U.S. 611, 96 S.Ct. 1075, 47 L.Ed.2d 267, would there be any barrier to retrial[.]

### IV.

We must now decide if the present case is an "ordinary" one contemplated by the cases cited above or if this case is one in which the mistrial motion was forced upon the defendants by prosecutorial overreaching [7] "motivated by bad faith or undertaken to harass or prejudice." The prosecutor may not act in bad faith in creating errors that prompt a defendant's motion for mistrial; otherwise once a prosecutor sees that his case is going badly, he could force a mistrial and have another chance at convicting the defendant. This would circumvent the purpose of the double jeopardy clause.[8]

The leading case for this proposition in this circuit is *United States v. Kessler*, 530 F.2d 1246, 1256 (5 Cir. 1976):

> Thus, a stringent analysis of the prosecutor's conduct, considering the totality of the circumstances prior to the mistrial, to determine if there was "prosecutorial overreaching" is our inquiry. If "prosecutorial overreaching" is found, a second trial is barred by the Double Jeopardy Clause notwithstanding the fact that the defendants requested the mistrial.
>
> To find "prosecutorial overreaching", the Government must have, through "gross negligence or intentional misconduct," caused aggravated circumstances to develop which "seriously prejudice[d] a defendant" causing him to "reasonably conclude that a continuation of the tainted proceeding would result in a conviction." *United States v. Dinitz, supra*, 424 U.S. at 688, 96 S.Ct. at 1080, 47 L.Ed.2d at 274. [footnote omitted].

McNeal v. Hollowell, 481 F.2d 1145 (5 Cir. 1973), cert. denied, 415 U.S. 951, 94 S.Ct. 1476, 39 L.Ed.2d 567 (1974); United States v. Romano, 482 F.2d 1183 (5 Cir. 1973), cert. denied sub nom., Yassen v. United States, 414 U.S. 1129, 94 S.Ct. 866, 38 L.Ed.2d 753 (1974); United States v. Goldstein, 479 F.2d 1061 (2 Cir. 1973); Roberts v. United States, 477 F.2d 544 (8 Cir. 1973); United States v. Iacovetti, 466 F.2d 1147 (5 Cir. 1972), cert. denied, 410 U.S. 908, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973); United States v. Lansdown, 460 F.2d 164 (4 Cir. 1972); United States v. Pappas, 445 F.2d 1194 (3 Cir.), cert. denied sub nom., Mischlich v. United States, 404 U.S. 984, 92 S.Ct. 449, 10 L.Ed.2d 368 (1971); United States v. Walden, 448 F.2d 925 (4 Cir. 1971); Houp v. State of Nebraska, 427 F.2d 254 (8 Cir. 1970), cert. denied, 401 U.S. 924, 91 S.Ct. 887, 27 L.Ed.2d 827 (1971); United States v. Henderson, 142 U.S.App.D.C.

21, 439 F.2d 531 (1970); United States ex rel. Montgomery v. Brierley, 414 F.2d 552 (3 Cir. 1969); Gregory v. United States, 133 U.S.App. D.C. 317, 410 F.2d 1016, cert. denied, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969); Vacarro v. United States, 360 F.2d 606 (5 Cir. 1966); United States v. Broderick, 425 F.Supp. 93 (S.D.Fla.1977); Hairston v. Slayton, 333 F.Supp. 197 (W.D.Va.1971).

7. The defendants do not complain that any misconduct on the part of the trial judge caused the mistrial motions. Therefore the only question here concerns prosecutorial misconduct.

8. [N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . .. U.S.Const., Amend. V.

The trial judge in his memorandum opinion states that the mistrial motions were not forced upon the defendants by prosecutorial misconduct. Our review of this finding is limited by the provision of Fed.R.Civ.P. 52(a) which provides that "findings of fact shall not be set aside unless clearly erroneous." *McNeal v. Hollowell*, 481 F.2d 1145, 1151 (5 Cir. 1973); *United States v. Goldstein*, 479 F.2d 1061, 1067 (2 Cir. 1973); *United States v. Wilson*, 534 F.2d 76, 82 (6 Cir. 1976).

■ We note that a finding of prosecutorial misconduct requires that the misconduct must have been a result of gross negligence [9] or intentional misconduct. In *Kessler*, we found misconduct arising from the introduction into evidence by the government of a known false exhibit. We characterized the introduction as intentional misconduct. In another case arising in a district court in this circuit, the district judge found that a government prosecutor invited a mistrial by asking a question which she had specifically agreed not to ask. The trial judge ruled that asking the question in violation of her agreement which had been ratified by the trial judge amounted to intentional misconduct. *United States v. Broderick*, 425 F.Supp. 93 (S.D.Fla.1977).

We now turn to the facts of the present appeal. Clearly, the error that precipitated the first mistrial motion is the most serious. During the testimony of Fred Beck, a former employee of defendant Crouch, the following transpired:

Q [by the prosecutor]. Okay. Now, I believe you say you left Mr. Crouch's employment around October of '73.

A Yes, sir.

Q And why did you leave his employment? Did you quit, or were you fired?

A Would you ask the question again, please sir? The first part?

Q What caused you to leave the employment of Mr. Crouch?

A I was aware of all these—

Q No. Excuse me. I am only concerned if there was some disagreement arose and you got fired and/or did you quit, rather than the details.

A Mr. Crouch, when he returned from a trip, told me he couldn't use me. He said he couldn't use me, and I said, "Why?" And he said, "I can't use you anymore."
And I said, "What do you mean, you fire me?" And he said, "Yes, something like that." .
And I said, "Well, I quit. You are not firing me."
And he said, "Are you going to stay and work the rest of the day?" And I said, "Of course not. I'm leaving right now," and packed the rest of my stuff and left.

Q After you had left the employment of Mr. Crouch, had it come to your attention that Mr. Crouch might be desirous of getting rid of you, so to speak?

A Yes, sir.

Q And as a result of that information, did you seek protection from the AT&F agency?

A Yes, sir.

Q And as a result of your seeking that protection, were you given or paid certain moneys to move your location?

A Yes, sir.

Mr. DeGUERIN: [Defense attorney]. If Your Honor please, this is leading and suggestive of the answer desired, and I object to it.

---

**9.** Mere negligence on the part of the government is not enough. *Lee v. United States*, 432 U.S. 23, 32–34, 97 S.Ct. 2141, 2147–2148, 53 L.Ed.2d 80, 89 (1977); *United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 27 L.Ed.2d 543 (1970); *United States v. DiSilvio*, 520 F.2d 247 (3 Cir. 1975). Indeed one circuit has observed, "It is unclear from the *Dinitz* opinion [*United States v. Dinitz*, 96 S.Ct. 1075 (1976)] whether 'overreaching' is limited to intentional misconduct or whether it would extend to gross negligence on the part of judge or prosecutor which led to mistrial." *United States v. Wilson*, 534 F.2d 76, 80 n.6 (6 Cir. 1976). We have held in *United States v. Beasley*, 479 F.2d 1124, 1126 (5 Cir.), *cert. denied*, 414 U.S. 924, 94 S.Ct. 252, 38 L.Ed.2d 158 (1973) that prosecutorial overreaching includes gross negligence.

THE COURT: Mr. Walker, it is. Just ask him what was said, please. Sustained.

Mr. WALKER: [Prosecutor]. Thank you, Your Honor.

Q (By Mr. Walker). How did this information come to you?

A The Alcohol, Tobacco and Firearms agents allowed me to listen to a tape recording of someone having a conversation with Mr. Crouch—

Mr. DeGUERIN: Excuse me, Your Honor. We have a Motion for the Court out of the presence of the Jury.

■ First, the defendants claim that the testimony concerning the taped murder threat was hearsay and a violation of *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).[10] While it is unnecessary to decide we will assume that the testimony concerning the recording was a violation of *Massiah*. If this were a direct appeal from a conviction, we note that *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 2089, 23 L.Ed.2d 656 (1969), would allow a remand for a new trial even if the testimony were a violation of *Massiah*. Absent some evil motive on the part of the government, we find it incongruous to allow the defendants to go free as a result of their mistrial motions when the most they could get as a result of a reversal in a direct appeal is a retrial. It appears from the record that the government's attorney wanted to demonstrate that Beck's testimony was not tainted by improper government payments and that Beck had a basis for

believing that his life was in danger. It was only after Crouch's attorney objected to the form of the question did the government's attorney ask the imprecise question that precipitated the objected to testimony.[11] A review of the cases discussing misconduct on the part of the prosecutor, reveals the following: In *United States v. Romano*, 482 F.2d 1183 (5 Cir. 1973), *cert. denied sub nom., Yassen v. United States*, 414 U.S. 1129, 94 S.Ct. 866, 38 L.Ed.2d 753 (1974), the prosecutor made an inadvertent prejudicial comment during opening argument which resulted in a mistrial. We found that since the comment was inadvertent there was not prosecutorial misconduct. In *United States v. Henderson*, 142 U.S.App.D.C. 21, 439 F.2d 531 (1970), the prosecutor announced at opening argument that he was calling the defendant's mother as a witness; when the prosecutor failed to call the proposed witness, the defendant's mistrial motion was granted. The District of Columbia Circuit found no misconduct. In *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552 (3 Cir. 1969), the prosecutor in his summation to the jury called the defendant a "pro" and an "old pro". The Third Circuit found that a mistrial resulting from the defendant's objection to these prejudicial comments did not result from prosecutorial overreaching. Like the above mentioned cases, we find that the prosecutor's question was not a deliberate attempt to vex or harass, but was mere inadvertence on his part, brought on by a large extent by defendants' objection and the trial judge's attempt to have his question clarified.

10. *Massiah v. United States*, 377 U.S. 201, 205, 84 S.Ct. 1199, 1202, 12 L.Ed.2d 246 (1964) prohibits the use in court of "Any secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence of counsel."

11. The government attorney stated in response to the defendants' objection his purpose in eliciting the objected to testimony:

MR. WALKER: I have not spoken, I would like to speak. . . . The question that led into this, because it has already been indicated in this courtroom that the Government through the ATF, or some of the force, have paid witnesses money.

—which was indicative of, the way counsel put it, the Government undertook to buying testimony. The Government has paid money, and it was only for that purpose that it was paid. And I think I indicated it was for the protection of a witness.

Further, I asked the witness whether or not information had come to him that Mr. Crouch had indicated killing, or having him killed. He said, "Yes."

And that is as far as I was going.

Counsel objected. And the Court said to me, to say what was said.

And then I asked the witness—

We note that this is a contemporaneous explanation and not an after the fact rationalization.

██ Next the defendants contend that the testimony was in breach of an agreement not to bring out any testimony concerning a once pending Houston case. A district court in this circuit in *United States v. Broderick, supra,* has held the breach of an agreement amounted to misconduct. We do not think the conduct in the instant case rises to this level. First, unlike *Broderick* there is a genuine disagreement as to the existence of the agreement. Second, the trial judge in *Broderick* ratified the agreement; in the present case the judge explicitly refused to enforce any agreement. And finally, we think that even if there were a ratified agreement, its breach was inadvertent, unlike the agreement in *Broderick* which was deliberately violated.

██ The second motion for mistrial occurred during the testimony of special agent Taylor of the Alcohol, Tobacco and Firearms Bureau. Agent Taylor testified that defendant Kudelka had said that he had an agreement with defendant Crouch whereby Kudelka would stick to his story and Crouch would pay the legal fees and see to it that Kudelka would get a pawn shop in Galveston. Crouch's attorney contends that the elicited testimony was in violation of a pretrial discovery order. The government attorney stated after the defense counsel had voiced his objection, "The witness surprised me. That's all I know." Certainly, if the agent's testimony surprised the government attorney, it cannot be said that the attorney was guilty of intentional misconduct.[12]

██ The appellants' third motion for mistrial was made after agent Taylor testified that when Crouch was asked to make a statement he did not do so. Appellants' contention is that the mere asking of a question that allowed Taylor to so testify is misconduct. This puts things a little high. We are not prepared to hold that the mere asking of a question, in the absence of a specific agreement not to, would ever insulate a defendant from prosecution. *See United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *United States v. Impson,* 535 F.2d 286 (5 Cir. 1976); *Walker v. United States,* 404 F.2d 900 (5 Cir. 1968); *Ivey v. United States,* 344 F.2d 770 (5 Cir. 1965). We think that it takes more than a single question to vitiate the government's ability to try these defendants on these very serious charges. After a review of the three mistrial motions made by the defendants, we are of the opinion that the trial court's decision that the motions were not brought on by prosecutorial overreaching is not clearly erroneous.

In *United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964), Mr. Justice Harlan stated:

> Corresponding to the right of an accused to be given a fair trial is in the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a

---

**12.** Since Crouch's attorney specifically withdrew this mistrial motion, we note an inconsistency in arguing that the government is guilty of misconduct in forcing a mistrial motion. Under *Kessler,* Crouch should not be allowed to argue that this error caused him to make a motion for mistrial and that the error was prosecutorial misconduct and then turn around and waive his mistrial motion. As discussed in note 3, *supra,* there is confusion regarding the effect of one defendant's motion and the other defendant's case. Defendants Crouch and Kudelka argue that they both waived this mistrial motion. The trial judge stated in his memorandum opinion that Kudelka did not waive his mistrial motion. Since under the *Kessler* analysis, a finding of misconduct would benefit Kudelka, we will assume that his mistrial motion was not waived and was prompted by prosecutorial error. We find, however, that the error was not grossly negligent or intentional. *See Roberts v. United States,* 477 F.2d 544 (8 Cir. 1973) (motion by one defendant was held to apply to other defendant in a case in which both defendants were jointly represented by one attorney).

conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest.

By analogy, we find many of the same notions are true in the context of finding prosecutorial misconduct. If the courts are too quick in finding prosecutorial misconduct the inevitable result would be that trial judges would simply stop granting motions for mistrial. There are valid reasons in our system why we allow a trial judge to abort an erroneous trial and yet not forfeit the government's right to try a lawbreaker. We wish not to disturb the practice of declaring mistrials when they are merited.

## V.

Finally, defendants Crouch and Kudelka ask this court to write a rule requiring the district court to give the defendants an opportunity to state on the record whether they desire to stand on their motions previously made, or to continue the trial to conclusion. In the circumstances of this case, such a course of conduct obviously would have been the better practice. We decline, however, to write this as the general rule. In *United States v. Goldstein*, 479 F.2d 1061 (2 Cir. 1973) the defendant had made a motion for mistrial while the jury was deliberating. Two hours later the trial judge granted a mistrial and the defendants claimed that they never had an effective chance to withdraw their motion for mistrial. The Second Circuit disagreed and held that Goldstein could have easily made his position clear to the judge. Similarly, defendants Crouch and Kudelka had ample opportunity during the course of the trial to withdraw their motions for mistrial. Furthermore, the defendants could have made their position known to the trial judge either during the conference of February 24 or at any time during the two week adjournment. In these circumstances it is the responsibility of the defendants to make known to the trial judge any change in their position regarding the mistrial motions.

After a review of this record and the arguments of the defendants, we are not prepared to hold that the Double Jeopardy Clause of the Fifth Amendment bars retrial of these defendants. Since the defendants made at least two mistrial motions and the motions were not forced upon the defendants by prosecutorial misconduct, we find that the fifth amendment is no bar to retrial. We express no opinion regarding the result were the mistrial granted *sua sponte*.

Accordingly, the judgment of the district court is AFFIRMED.

GOLDBERG, Circuit Judge, dissenting:

Because I disagree with Section V of Judge Thornberry's able opinion, I respectfully dissent from the majority's holding in this case.

Defendants Crouch and Kudelka ask this court to adopt a rule that when a trial court first overrules a mistrial motion and significant proceedings then take place, the court before declaring a mistrial must give the defendants an opportunity to choose between (1) withdrawing their mistrial motions and continuing the trial and (2) reasserting their motions. The majority admits that "such a course of conduct obviously would have been the better practice . . . in the circumstances of this case," yet declines to require such a procedure. I fully agree with the majority as to the desirability of such a practice but also believe that the policies of the double jeopardy clause as articulated by the Supreme Court in *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), require our adoption of this rule.

In *Dinitz* the Supreme Court stated that: Even when judicial or prosecutorial error prejudices a defendant's prospects of securing an acquittal, he may nonetheless desire 'to go to the first jury and, perhaps, end the dispute then and there with an acquittal.' *United States v. Jorn*, [400 U.S. 470, 484, 91 S.Ct. 547, 27 L.Ed.2d 543 (1970)]. Our prior decisions recognize the defendant's right to pursue this course in

the absence of circumstances of manifest necessity . . . .

96 S.Ct. at 1080.

The Court recognized that the defendant generally faced a "Hobson's choice" between giving up his first jury and proceeding with a tainted trial, and stressed that in light of this predicament "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retains primary control over the course to be followed in the event of such error." Id. at 1081 (emphasis supplied).

The procedure for declaring the mistrial utilized by the court below hardly satisfied the policy of allowing the defendants to retain primary control over this aspect of the proceedings. The mistrial was declared by the trial judge over two weeks after the defendants' mistrial motions first were denied. The trial judge declared the mistrial without asking the defendants whether they wished to proceed with the trial and without giving the defendants an opportunity to withdraw their mistrial motions.

The events which transpired between the last mistrial motion and March 8th mistrial declaration, including the conclusion of the government's presentation, the beginning of the defendants' case, and the two week recess, easily could have changed the defendants' perception as to whether, on March 8th, it was in their interest to have a mistrial declared. For example, it is possible that the remainder of the government's case had gone poorly, that the defendants' case was going well, or that the recess might have mitigated some of the prejudicial effects of the prosecutorial errors. The defendants were in the best position to assess these factors and determine whether or not to withdraw their mistrial motions. I believe that Dinitz requires that the decision be made by the defendants, who should retain "primary control over the course to be followed . . . ." Id.

Adopting the rule proposed above would allow the defendants to retain such control without imposing any significant burden on the trial court. The majority in the instant case admit that it is the "better practice."

Furthermore, such a rule is not inconsistent with the Second Circuit's decision in United States v. Goldstein, 479 F.2d 1061 (2nd Cir. 1973), which is discussed in Section V of the majority opinion. In Goldstein the defendant made his motion for mistrial after the case had gone to the jury and the trial judge had given a modified "Allen" charge. Two hours later when it appeared that the jury was deadlocked, the trial judge granted the motion. The most obvious distinction between Goldstein and the instant case is that in Goldstein, as the Second Circuit opinion points out, no in court proceedings took place between the mistrial motion and the judge's mistrial declaration that might have changed the defendant's perceptions regarding the desirability of a mistrial. Id. at 1066. More importantly, the Goldstein court concluded that the mistrial was declared with the defendant's "consent" because the judge's remarks before discharging the jury made it clear that he was about to declare a mistrial, yet defense counsel did not make use of the opportunity to "disabuse the judge of the idea that they still wanted" a mistrial. Id. Here on the other hand, the defendants had no reason to expect the sudden declaration of mistrial and were given no opportunity to withdraw their motions. In no way can defendants be said to have "consented" to the mistrial declaration; that crucial difference is precisely why I feel compelled to dissent in this case.

In conclusion, I would hold that the double jeopardy clause bars retrial of defendants Crouch and Kudelka because they were not given an opportunity to withdraw their mistrial motions before the mistrial was declared. I therefore respectfully dissent.