In the Matter of J. F. T., Appellant.

No. 7475.

District of Columbia Court of Appeals.

Argued March 20, 1974.

Decided June 4, 1974.

Arthur Lowy, Washington, D. C., appointed by this court, for appellant.

E. Calvin Golumbic, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before NEBEKER, PAIR and HARRIS, Associate Judges.

NEBEKER, Associate Judge:

This appeal from a delinquency proceeding presents primarily the question whether the delinquent's custodial confession to a burglary, larceny, and malicious destruction of property was properly admitted into evidence. The motion to suppress that confession was oral and imprecise. From the pretrial hearing record it is apparent that the motion was based on assertions that "the statement was [not] voluntarily given, and that the respondent [did not] knowingly waive his right. to counsel." During the hearing, the only other more particular assertion to surface was that the delinquent .had a right to the presence of his mother during questioning. Primary reliance was placed on a "per se" rule, reportedly adopted by some other trial court judges, that no juvenile can validly waive rights and thereby voluntarily incriminate

himself absent the presence of a parent or an attorney. We treat three less significant issues at the end of this opinion, and affirm.

This 15-year-old delinquent previously had been charged in nine separate proceedings. After an apprehension in 1972 (thirteen months before the instant arrest), the delinquent, upon advice as to his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), refused to speak to this same arresting officer. In the instant case, when appellant was arrested at his mother's home at about 5:15 a. m., he was under a partial commitment order whereby he knew he was to return to custody. The arresting officer told appellant's mother, "We are taking him back to [the institution]".

Upon this arrest, and after having been first warned at the home by the arresting officer in the presence of his mother, the youth indicated that he understood his rights. He was again warned by a Youth Division officer after his arrival at the police station. Before this last warning, that officer stated he was going to "advise him of his rights". The delinquent responded that he already "knew them, and [the officer] didn't have to do that." A second warning or recitation was given in any event. Instead of indicating a willingness to answer all or any questions, the delinquent indicated a desire to be selective. He wrote "some" on the waiver form in response to whether he would answer questions. Within a few minutes, the delinquent stated, "You know I did it, don't you? You have my fingerprints".

The record does not reveal the precise context in which the challenged confession was forthcoming. We do know, however, that it was freely given without request for counsel, presence of a parent, or an indication of a change of mind. We also know from the mother's testimony that when the police arrived at her home she saw them through a window and immediately said to her son, "[C]ome on, give

yourself up." The mother also added that "he got his clothes on and I led him to the door."

■ At the outset, we reject a so-called "per se" rule arbitrarily holding any juvenile's statement involuntary absent the presence of a parent or counsel. It must be recognized that some juveniles who commit criminal acts are essentially as sophisticated, or more so, in matters of this kind as many just over the age limit. In delinquency proceedings particularly, it is essential to balance the constitutional rights which relate to possible loss of liberty with the recognized modern approach and policy of care and treatment for the criminally-bent youth. This balancing cannot assume a legal incapacity to waive those rights without sacrificing, in many cases like this one, the vital interests underlying the policies and goals of the juvenile court system. *Cf.* Harling v. United States, 111 U.S.App.D.C. 174, 177, 295 F.2d 161, 164 (1961); Pee v. United States, 107 U.S.App.D.C. 47, 274 F.2d 556 (1959). Indeed, the authority cited in footnote 12 of Judge Bazelon's *Harling* opinion assumes that waiver of rights by juveniles is possible. *Id.* at 176 n. 12, 295 F.2d 163 n. 12. Persuasive cases support the notion. *See* United States v. Miller, 453 F.2d 634 (4th Cir. 1972); Cotton v. United States, 446 F.2d 107 (8th Cir. 1971); West v. United States, 399 F.2d 467 (5th Cir. 1968); United States v. Vitek, 395 F.2d 478 (7th Cir. 1968).

We must, then, decide whether the trial judge properly admitted this confession under all the circumstances revealed. In doing so, we are aware that it is contended:

The record also does not show affirmatively, as it must, that the Juvenile Court Judge found "that by reason of 'age, education, and information, and all the pertinent facts' the minor [was] able to [and did] make an intelligent waiver." McBride v. Jacobs, 101 U.S.App.D.C. 189, 247 F.2d 595 (D.C.Cir., 1957) (Per

Curiam). Because of this, the respondent's cause should be remanded for another hearing on the totality of the circumstances surrounding the making of his confession . . . . [Brief for Appellant at 10.]

Contrary to this contention, the written order of the trial judge reveals an awareness of the need to consider such factors. That order also demonstrates a careful consideration of factors militating for as well as against admissibility of the confession. The degree of experience with law enforcement was significant. *See* Rosser v. United States, D.C.App., 313 A.2d 876 (1974); Hawkins v. United States, D.C. App., 304 A.2d 279 (1973). So also was a history of the youth's refusal to answer questions during a previous arrest, and the fact that in this instance there was a willingness to answer "some" questions. Age was considered but, in this case, not deemed determinative either way. While noting the absence of the mother at the police station, the trial court judge also observed that she was told that she could be with her son during the critical period, and that within two hours she was advised of his place of detention and the date of the court appearance.

■ We conclude that the trial court judge considered relevant factors presented to him on this question and that remand of the case is not called for. We also find in the record an adequate basis for the trial court's holding the confession to have been the product of a knowing and intelligent waiver of relevant rights and to have been voluntarily given. *See* Rosser v. United States, *supra*; Hawkins v. United States, *supra*.

■ Appellant also contends that the confession was inadequately corroborated. The court disagrees. The victim described the break-in and the items stolen. The confession was consistent with that testimony and thus adequately corroborated for trustworthiness. *See* Harrison v. United States, D.C.App., 281 A.2d 222, 225 (1971).

■ Appellant further asserts that proof of value for grand larceny was inadequate. The victim testified as to the purchase price of the stolen items (total of $521) and to the fact of their very recent purchase and mint condition at the time of the theft. It is observed that two of the stolen items, a .38 caliber pistol and a camera, are not items of prompt depreciation or obsolescence,[1] and that their aggregate value (very recent purchase price) exceeded $100. Under these circumstances this case is unlike Boone v. United States, D.C.App., 296 A.2d 449 (1972), where the "strict rule" of United States v. Thweatt, 140 U.S.App.D.C. 120, 433 F.2d 1226 (1970), was followed. Here the issue of value is removed from the area of speculation by the testimony. In *Thweatt*, the items included clothing purchased three and four years "before this event", *id.* at 127, 433 F.2d at 1233, and a typewriter with an estimated resale value of between $50 and $55. The owner's testimony as to the purchase price of the clothes was $38 for a coat and $12 for three shirts. The court correctly viewed such evidence on value as requiring speculation. So also did this court in *Boone* respecting testimony as to two sets of golf clubs costing $211 and $101 respectively (one having been purchased five years earlier, the other, quite recently), and an estimate that each set was worth $50 when stolen. No doubt value in grand larceny is a critical element for some precision in proof. As value approaches the $100 statutory mark, precision without speculation is the "strict rule", Boone v. United States, supra at 450, but where the proof is as it is in this case, a fact finder can, without such impermissible indulgence, find grand larceny value beyond a reasonable doubt.

■ One final comment respecting the composition of the record is warranted.

1. For a brief discussion of the impact of such factors on value of chattels, see United States v. Henderson, 142 U.S.App.D.C. 21, 23, 439 F.2d 531, 533 (1970).

At the end of the trial, oral findings were made as required by Super.Ct.Juv.R. 31(a). However, no judgment has been included in the record. Instead, a handwritten entry has been made on the case jacket stating, "Respondent found guilty." Without recourse to the transcript it is not possible to know the precise findings and adjudication. Super.Ct.Juv.R. 32(b) requires a judgment which "shall set forth the plea, the findings, the adjudication, and the dispositional order." Neither the jacket entry nor the dispositional order, which is in the record, suffices.

The findings of the trial court are affirmed and the case is remanded for full compliance with Rule 32(b), supra.

So ordered.