**In the Matter of D. A. S., Appellant.**

**No. 12613.**

District of Columbia Court of Appeals.

Argued April 25, 1978.

Decided Aug. 21, 1978.

**256**

Diane M. Smith, Washington, D. C., appointed by this court, for appellant.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Washington D. C., at the time the case was briefed and argued, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before KELLY and NEBEKER, Associate Judges, and HOOD, Chief Judge, Retired.

NEBEKER, Associate Judge:

The sole issue on this appeal from a Family Division determination finding appellant guilty of robbery, D.C.Code 1973, § 22–2901, is whether the admitted use by the police of lies and tricks rendered appellant's confession involuntary. We hold that the use of artifice does not by itself invalidate an otherwise voluntary confession. Under the circumstances of this case, we affirm the trial court's holding that appellant made an intelligent waiver of his rights and voluntarily inculpated himself.

A woman was robbed of her pocketbook and was beaten about the head at about 10:00 p. m. on July 8, 1977, in the 3500 block

of Rittenhouse Street, N. W. She described the robber as a black 18-year-old male, weighing 170 pounds and wearing blue cut-off pants and a white tee-shirt. Police detectives arriving on the scene after the victim's telephone call, found her shoes and blood on the sidewalk.

While searching in the neighborhood, the officers noticed a taxicab, which appeared to be cruising the area, carrying a young black male passenger "slumped down" in the back seat. When stopped, the cabdriver indicated that the passenger was looking for a particular house, but did not know the address. The officers noticed that the passenger, appellant, fit the robber's description, except that he was not wearing a shirt. After following the cab for another ten or fifteen minutes while it circled in the same neighborhood, the officers stopped it again. This time they told appellant to get out of the cab and asked him for identification, which he provided.

One of the officers, Detective Ormand, then told the appellant the first in a series of lies. He said that he and his partner had seen appellant in the area earlier that evening. Appellant replied that he had been there jogging. The officers then told him they were investigating a robbery, and asked him if he would agree to accompany them to the victim's home where he could be viewed by her for identification purposes. Detective Shaffer later testified that appellant agreed to accompany them.[1] The officers then sent the cab away.

Appellant arrived with the officers at the victim's home at 11:20 p. m. At that time she was at the hospital being treated for her injuries. According to Detective Shaffer, appellant said he didn't mind waiting for her. The victim did not return home until 12:50 a. m. In the intervening time, appellant remained outside the home discussing sports with the detectives. Appellant was not told he was under arrest, and in fact was told he was free to leave.

The victim's handbag was found and brought to her home at 12:15 a. m. Although the only fingerprint found on the bag was an unidentifiable smudge on a checkbook, appellant was asked to place his hands on the police car so that his fingerprints could be lifted and compared with prints supposedly found on the handbag. Appellant did so. A crime scene officer then pretended to compare fingerprints. He reported to Detective Shaffer that "14 points" matched. Shaffer then told appellant the second lie, saying, "Your fingerprints were recovered from the pocketbook that was stolen from the complainant." The detective then read appellant the *Miranda* warnings.[2] Shaffer testified that appellant indicated he understood his rights, and then said that he'd seen a purse lying in an alley when he'd been jogging, and had picked it up to look through it, but had not taken anything.

The victim arrived at 12:50 a. m., and told the detectives, out of appellant's earshot, that she was unable to make a positive identification of the appellant. Detective Shaffer approached appellant and asked, "Guess what?" Appellant replied, "Yeah, I know. She identified me." Shaffer responded, "Right." Appellant then tried a new explanation, claiming that he was standing nearby while two other youths committed the robbery. The victim denied this story, again out of appellant's presence, affirming that there had been only one robber. Shaffer then approached appellant, put his hand on appellant's neck, and told him to "start leveling with us," and "let's get down to the truth." Appellant testified that the detective did not hurt him and that he did not feel threatened "with any kind of violence."

After Shaffer re-entered the house, appellant admitted to Detective Ormand that he had committed the robbery. Ormand then repeated the *Miranda* warnings. At

---

1. Appellant denied the officer's testimony, saying that he went along, "because he told me to." However, the hearing court found that appellant "did go back knowingly," and was "voluntarily on the scene." Appellant makes no issue as to this finding.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

police headquarters, after further *Miranda* warnings, appellant signed a waiver of his right to remain silent and his right to counsel, and signed a written confession. Appellant's motion to suppress related to both the oral and written statements.

The Family Division court found that the trickery engaged in by the police was not such as to overcome the appellant's free will, and denied the motion. The court found that appellant voluntarily accompanied the police and was willing to cooperate with them. Appellant, whom the court termed "somewhat sophisticated" because of his five previous arrests, was, according to the court making an attempt to "outsmart" the police, who in turn were trying to "outsmart" him.

Appellant contends on this appeal that his age and the police deception rendered his confession involuntary and unintelligent.

■ We begin our analysis by noting that "admissions and confessions of juveniles require special caution." *In re Gault*, 387 U.S. 1, 45, 87 S.Ct. 1428, 1453, 18 L.Ed.2d 527 (1967). Nevertheless, in *In re J. F. T.*, D.C.App., 320 A.2d 322 (1974), this court rejected a per se exclusionary rule for the confessions of juveniles, a minor's confession is admissible after a clear showing of prior warning and a subsequent valid waiver of rights. *Id.* at 324. The pertinent factors to consider when determining the validity of a waiver of constitutional rights by a juvenile include the individual's age, education and information, *McBride v. Jacobs*, 101 U.S.App.D.C. 189, 190, 274 F.2d 595, 596 (1957); the degree of experience with law enforcement, *In re J. F. T., supra* at 325; the circumstances of the questioning, any delay between arrest and confession, and any allegations of coercion or trickery, *Rosser v. United States*, D.C.App., 313 A.2d 876 (1974). Thus, rather than giving overriding importance to any one factor, the court must consider the totality of circumstances surrounding the confession. *See Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Gallegos v. Colorado*, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962).

■ Where deception and trickery are included among the factors to be considered, the analysis is ordinarily dual-phased. First, it must be determined whether an intelligent and free waiver of relevant rights was made by the accused before he began to speak, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In this case no point is made as to this part of the analysis, for the record clearly supports a finding of proper waiver. The second phase is related to the deception itself, as it is possible that even given proper waiver of relevant rights, the deception used could be such as to render a subsequent statement inadmissible.

■ We hold that the deception reflected on this record is insufficient to make an otherwise voluntary confession inadmissible. *See Frazier v. Cupp, supra.* Confessions generally are not vitiated when they are obtained by deception or trickery, as long as the means employed are not calculated to produce an untrue statement. *See Moore v. Hopper*, 389 F.Supp. 931 (M.D.Ga. 1974) (Officers falsely told defendant that the gun used in the shooting had been recovered); *United States v. Bostic*, 35 C.M.R. 511 (A.C.M.R.1964) (Investigator falsely told accused he had been identified by several witnesses); *Moore v. State*, 230 Ga. 839, 199 S.E.2d 243 (1973) (Defendant falsely told that murder weapon had been found); 3 Wigmore, Evidence § 841 (Chadbourne rev. 1970).

■ When presented with deception of the sort practiced in this case, where the police lead a suspect to believe that the evidence against him is stronger than it is, courts have upheld the admissibility of any resulting confessions. *See State v. Boren*, 224 N.W.2d 14 (Iowa), *cert. denied*, 422 U.S. 1008, 95 S.Ct. 2630, 45 L.Ed.2d 671 (1975) (Officers falsely told defendant accused of incest that his daughter had passed a lie detector test); *McGee v. State*, 2 Tenn.Cr. App. 100, 451 S.W.2d 709 (1970) (Officer falsely told murder defendant that his polygraph test and tests of his clothing showed

he was lying); *United States v. Bostic, supra; People v. Pendarvis,* 189 Cal.App.2d 180, 10 Cal.Rptr. 923 (1961) (Defendant accused of forging and uttering a prescription for a narcotic was falsely told he had been identified by the pharmacist). The exception occurs when courts find that the deception, by making the situation appear hopeless, combined with other circumstances, constitutes coercion. *See United States ex rel. Caminito v. Murphy,* 222 F.2d 698 (2d Cir.), *cert. denied,* 350 U.S. 896, 76 S.Ct. 155, 100 L.Ed. 788 (1955) (Confrontation of accused with disguised police officers who made false identifications of him was insufficient to invalidate the confession; however, the confession was inadmissible because of other factors, including holding accused incommunicado for 40 hours); *United States v. Morales,* 233 F.Supp. 160 (D.Mont.1964) (Juvenile was shown false confessions supposedly made by his accomplices; however, he was also confined in jail overnight without being allowed to see a lawyer or a relative; also evidence was insufficient, even with the statement, to find guilt of entering a post office with the intent to commit larceny).

The totality of circumstances in this case is not such as to require a holding that the artifice resulted in a coerced confession. Appellant was four months short of his eighteenth birthday at the time of his arrest. He was, as the trial court found, "somewhat sophisticated," at least as far as his experience with law enforcement was concerned. He voluntarily accompanied the police and was never restrained, threatened or coerced. He repeatedly was informed of his constitutional rights, and the trial court's finding that he understood those rights and was attempting to outsmart the police is supported by the record.

We conclude that the record provides an adequate basis for the trial court's conclusion that the confession was the product of a knowing, intelligent and voluntary waiver of appellant's rights. *See In re J. F. T., supra* at 325. The deception practiced here by the police was not of the sort which would induce a false confession or would overcome the appellant's will.

Accordingly, the judgment appealed from is

*Affirmed.*