Charles P. MALLOY, Appellant,

v.

UNITED STATES, Appellee.

Ricky M. BROWN, Appellant,

v.

UNITED STATES, Appellee.

Nos. 83–109, 83–384.

District of Columbia Court of Appeals.

Submitted July 31, 1984.

Decided Nov. 2, 1984.

Joseph W. Thomas, Hyattsville, was on brief, for appellant Charles P. Malloy.

Ernest W. McIntosh, Washington, D.C., was on brief, for appellant Ricky M. Brown.

Joseph E. diGenova, U.S. Atty., Washington, D.C., with whom Kenneth W. Cowgill, Michael W. Farrell, Thomas J. Tourish, Jr., and Donald Allison, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEBEKER and BELSON, Associate Judges, and YEAGLEY, Associate Judge, Retired.

YEAGLEY, Associate Judge, Retired:

Appellants were jointly charged in an indictment filed on July 7, 1982, with second-degree burglary, D.C.Code § 22–1801(b) (1981), and grand larceny, *id.* § 22–2201. On December 3, 1982, a jury found them guilty as charged. Appellant Malloy contends that his conviction of burglary is not supported by sufficient evidence. Both appellants argue that the government's proof concerning the value of the stolen goods was insufficient to support grand larceny convictions. We affirm in part and reverse in part.

Evidence presented by the government indicates that in early November 1981, Mary L. Little moved into an apartment at 4373 Barnaby Road, S.E. Work was being performed on the apartment, so after her belongings were moved in, Little stayed with her daughter who lived in a nearby apartment building. Little's daughter, Denice Perry, testified that on the morning of November 4, 1981, she was informed by a painter who was working in Little's apartment that the apartment had been burglarized overnight. Perry went to the apartment and discovered that numerous items had been stolen, including a china cabinet, a color television, two lamps, linens, drapes, a clock radio, two irons, and a strong box.

James Boyd testified that during the early morning hours of November 4, 1981, he returned to his apartment at 4373 Barnaby Road, and as he entered the building, he saw a man whom he knew as "Rick" entering a vacant apartment. Boyd observed that Rick, who was subsequently identified as appellant Brown, had been pulling "a big cabinet." Boyd ascended the stairs of the apartment building and peered over the stair railing to observe Brown return to the hallway with a man known to Boyd as "Creek." Brown and "Creek," who was later identified as appellant Malloy, began to move the cabinet, but they ceased their efforts and hid when two other residents entered the building. Boyd then watched them reemerge and take the cabinet outside to a truck.

As Brown and Malloy went outside to the truck, Boyd saw a third man, whom he knew as "James," run from the vacant apartment while holding some lamps. Shortly thereafter, the same person carried a television out of the building. Appellant then reentered the building to pick up some boxes which they then brought outside. Boyd then concluded his observations. On the following day, he reported to police officers what he had seen and identified

photographs of appellants.[1] Detective Robert Thiebeau testified that after learning of appellants' identities, he discovered that both of them were formerly employed at the apartment complex where the burglary occurred.

## I

Appellant Malloy challenges his burglary conviction, contending that it is not supported by sufficient evidence. Specifically, he argues that Boyd's identification testimony lacked corroboration and that guilt beyond a reasonable doubt was therefore not established.

■■■ A conviction based on the identification testimony of one witness will not be disturbed if "a reasonable juror could find the circumstances surrounding the identification to be convincing beyond a reasonable doubt." *Smith v. United States*, 389 A.2d 1356, 1358 n. 5 (D.C.1978) (citations omitted). Here, Boyd testified that he observed appellants intermittently for approximately thirty minutes as they carried Little's belongings from her apartment. He said he had known them for "a good little while." He also testified that the hallway in which he observed them had "very clear" lighting. Viewing this evidence in a light most favorable to the government, it was sufficient for a reasonable juror to conclude beyond a reasonable doubt that appellants committed the burglary.

## II

■■■ Appellants contend that the value of the stolen items was not proved with the certainty needed to support a grand larceny conviction. A grand larceny conviction must be supported by proof that the stolen property had a value of $100 or more at the time of the theft. D.C.Code § 22–2201 (1981). This court continues to adhere to the strict rule that the government must "present evidence of an item's value at the time of the theft 'sufficient to eliminate the possibility of the jury's verdict being based on surmise or conjecture.'" *Wilson v. United States*, 358 A.2d 324, 325 (D.C. 1976) (quoting *Boone v. United States*, 296 A.2d 449, 450 (D.C.1972)). Thus, "it is reversible error to submit the issue of value to a jury where the only evidence produced was: (a) the physical presence of the items stolen, and (b) the owner's statement of original cost." *Boone v. United States*, *supra*, 296 A.2d at 450 (citing *United States v. Thweatt*, 140 U.S.App.D.C. 120, 433 F.2d 1226 (1970)).[2]

■■■ In the present case, Little and Perry named the numerous items that were stolen and testified that the television had been purchased slightly more than a year before the theft for approximately $600. Perry also testified that the china cabinet had been purchased approximately three years before the theft for $225 and that the clock radio had been purchased one year earlier for $50. There was, however, no evidence concerning the value of any of the items at the time they were stolen.[3] There

1.  Boyd's testimony was corroborated in part by Sharon Tolen who testified that on the morning of November 4, she entered the apartment building and saw two men attempting to move a china cabinet. When the men saw her, they immediately turned away. Tolen was unable to identify appellants. Tolen testified that the door of a recently occupied apartment was open, causing her to believe that the china cabinet had come from that unit.

2.  Departure from the requirement of direct evidence of value at the time of the theft is permissible where: (1) the item was very recently purchased for substantially more than $100; (2) it was in "mint condition at the time of the theft"; and (3) it was not subject to "prompt

depreciation or obsolescence." *In re J.F.T.*, 320 A.2d 322, 325 (D.C.1974). Here, the items were not recently purchased, and there was no testimony to indicate that they were in "mint condition." Moreover, the television and the radio were certainly items subject to fairly prompt depreciation. Thus, this is not a case where departure from the strict rule of proof is appropriate.

3.  It is generally recognized that the market value of a chattel may be established by the testimony of its non-expert owner. *In re R.D.J.*, 348 A.2d 301, 304 (D.C.1975) (quoting *Saunders v. United States*, 317 A.2d 867, 868 (1974)); *see generally* cases in Annot., 37 A.L.R.2d 967 (1954).

was a noticeable lack of evidence indicating that the television and the radio were operable. Nor did the government introduce evidence concerning the condition of the china cabinet or any of the other stolen items. While it might be reasonable to presume that the aggregate value of the items was in excess of $100, the standard of proof in this jurisdiction does not permit such conjecture. We conclude that the government's evidence was insufficient to establish the minimum value required for grand larceny.

▮ As we have done in similar cases where the evidence supported a conviction of petit larceny but not grand larceny, we reverse the grand larceny convictions and remand for entry of judgments of convictions for petit larceny. D.C.Code § 22–2202 (1981). We note that in imposing sentences for the second-degree burglary convictions, the trial court did not impose the maximum permitted by statute. It is possible that the court chose to spread the sentences over the grand larceny and burglary convictions. Where such a possibility is present, as we have previously recognized, vacating one of the convictions could "upset an interdependent sentencing structure." *Thorne v. United States*, 471 A.2d 247, 249 (D.C.1983) (per curiam) (citations omitted). The appropriate procedure, therefore, is to remand appellants' burglary and grand larceny convictions so that the trial court can resentence with the knowledge that the grand larceny convictions have been vacated and petit larceny convictions have been entered.

Accordingly, each appellant's conviction of grand larceny is reversed, their sentences for grand larceny and second-degree burglary are vacated, and their cases are remanded with instructions to enter convictions of petit larceny and for resentencing. The judgments are otherwise affirmed.

*So Ordered.*

NEBEKER, Associate Judge, dissenting in part:

Appellants contend that because there was a lack of direct proof that the stolen items had an aggregate "value of $100 or upward," D.C.Code § 22–2201 (1981), at the time of the theft, their motions for judgment of acquittal should have been granted. In passing upon such a motion, the trial judge must view the evidence in the light most favorable to the government and give it the benefit of all justifiable inferences which can be drawn therefrom. Further, when there is a possibility of convicting a defendant of either grand or petit larceny, depending upon the value of the stolen property, the government's proof of value must provide a "firm basis" upon which the jury can reach a decision. *United States v. Thweatt*, 140 U.S.App.D.C. 120, 127, 433 F.2d 1226, 1233 (1970).

In the present case, the testimony of value was not elicited in an ideal way. Nonetheless, the complainant and her daughter testified that a china closet, lamps, and television had been stolen. The daughter also stated that the 19-inch color television had been purchased for approximately $600 one year earlier, and the three-year-old china closet had originally cost $225.[1] Given the purchase price and number of items named in the indictment, it is evident that their value at the time of the theft was sufficiently above the $100 minimum so as to remove that issue from the realm of speculation. *In re J.F.T.*, 320 A.2d 322, 325 (D.C.1974).[2] Indeed, the very

---

1. These witnesses were competent to testify as to value, as the "market value of a chattel ... may be established by the testimony of its non-expert owner," *Moore v. United States*, 388 A.2d 889, 891 (D.C.1978) (quoting *In re R.D.J.*, 348 A.2d 301, 304 (D.C.1975)).

2. This case is unlike either *United States v. Thweatt, supra*, or *Boone v. United States*, 296 A.2d 449 (D.C.1972). In *Thweatt*, the stolen

property included a typewriter with an estimated market value of $55, a four-year-old suit which had originally been purchased for $38, and three shirts purchased for $12 four years earlier. There, the court found that the jury would have to speculate as to the items' value. *Thweatt, supra*, 140 U.S.App.D.C. at 126–27, 433 F.2d at 1232–33. Likewise, in *Boone*, where two sets of golf clubs costing $211 and $101 respec-

effort needed to take and carry away so many bulky items is a good indication that their value exceeded $100. In my view, the trial court correctly overruled defendants' motions for judgment of acquittal, as there was ample evidence from which the jury could draw a legitimate inference that the stolen items were worth at least $100 and more likely above that amount.

Accordingly, I dissent to the reversals of the convictions for grand larceny.

tively had an estimated value of $50 each when stolen, this court viewed such evidence as requiring speculation. *Boone, supra,* 296 A.2d at 449–50. Because the value of the stolen items in those cases approached the $100 statutory mark, "precision without speculation" was the rule correctly applied by the courts. *See In re J.F.T., supra,* 320 A.2d at 325. We did not purport to set a minimum as to testimonial form before value can be established.