Elauin L. HEBRON, Appellant,

v.

UNITED STATES, Appellee.

No. 00–CF–892.

District of Columbia Court of Appeals.

Dec. 11, 2003.

Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher and Barbara J. Valliere, Assistant United States Attorneys, filed the petition for appellee.

Deborah A. Persico, Washington, DC, appointed by the court, filed the response to the petition for appellant.

Before WAGNER, Chief Judge, TERRY, STEADMAN, SCHWELB, FARRELL, RUIZ, REID, GLICKMAN and WASHINGTON, Associate Judges.

STEADMAN, Associate Judge:

Appellant Elauin Hebron was convicted by a jury of first degree theft, which requires proof that the stolen property had a value of $250 or more. D.C.Code § 22–3812(a) (1996) (now D.C.Code § 22–3212 (2001)). On his appeal, a division of this court, per curiam, reversed his conviction on the ground that, under an especially demanding standard that might be read into certain language of our existing case law relating to proof of value, the government failed to present sufficient evidence to support a first-degree theft conviction. *Hebron v. United States,* 804 A.2d 270 (D.C.2002) (*"Hebron I"*). Two members of the division, however, in a separate concurrence questioned whether the time had come to re-examine our body of case law concerning proof of value. *Id.* at 274.

We, therefore, grant the petition for rehearing en banc and undertake to clarify language used in our proof of value cases that may have fostered a misimpression, namely, that some sort of "super proof" is required in the proof of the element of value. Our past decisions, despite the emergence of language terming our proof of value as, for example, "very strict," never required any such enhanced proof. As a result and to correct any misconception as to what proof of value is required, we now reapply our long existing standard to the facts of appellant's case and hold, en banc, that the same uniform and familiar standard of evidentiary sufficiency applies to proof of value that applies to any other element of the charged offense, namely, proof beyond a reasonable doubt. *See Rivas v. United States,* 783 A.2d 125, 133 (D.C.2001) (en banc); *(Darius) Smith v. United States,* 709 A.2d 78, 82 (D.C.1998) (en banc). As we noted in *Rivas,* 783 A.2d at 134, proof beyond a reasonable doubt also furnishes the standard for judicial review of the sufficiency of the evidence. That appellate standard, which we have articulated in numerous cases, requires that "[a]ll reasonable inferences must be drawn in favor of the government, and deference must be given to the trier of fact's right to determine credibility and weigh evidence .... [T]he government is not required to negate every possible inference of innocence before an accused may be found guilty of an offense beyond a reasonable doubt. It is only where the government has produced no evidence from which a reasonable mind might fairly

infer guilt beyond a reasonable doubt that this court can reverse a conviction." *Smith v. United States*, 809 A.2d 1216, 1221 (D.C.2002) (citations and internal quotation marks omitted).

## I.

■ The approach, in at least some of our cases, which could be read to suggest that the value of an item must be proved with some sort of special strictness seems to have found its origin in this jurisdiction in a 1970 decision of the United States Court of Appeals for the District of Columbia Circuit, *United States v. Thweatt*, 140 U.S.App. D.C. 120, 433 F.2d 1226 (1970). In *Thweatt*, the government attempted to prove that the value of the stolen property was greater than $100 (as the statute then required) by introducing the testimony of a pawnbroker and the victim. The pawnbroker indicated a stolen typewriter had a resale value of $55 and the victim noted he had purchased three shirts for $12 and a suit for $38 three or four years before the theft, which the trial court described as "old worn clothing, some of it patched and repaired." The government argued that testimony of the original price of the items stolen was in itself sufficient proof of value. Understandably the appellate court rejected that view and adopted the rule that "when there is a possibility of convicting the defendant of grand or petit larceny ... it is essential that the government introduce evidence of that value in order to give the jury a firm basis upon which it can render a verdict" and that proof of value could not rest on "conjecture and surmise." 140 U.S.App. D.C. at 126–27, 433 F.2d at 1232–33. Unremarkably, the

court concluded that the government had failed to introduce sufficient evidence of value in the case before it.

Our own case law, however, developed in a manner that tended, in its phraseology, to suggest that the government's proof of value was subject to a requirement of proof distinct from and well above and beyond that required for other elements of an offense, which we variously termed "very strict" or "requiring affirmative proof of value" or "substantial probative evidence of value" or "clear proof of value." *Zellers v. United States*, 682 A.2d 1118, 1121 (D.C.1996).[1] In particular, we seriously discounted the relevance of proof of original purchase price, although such an inquiry would appear to be the logical starting point for the great bulk of value determinations and a plainly relevant fact to be taken into account with the totality of surrounding circumstances in evidence. In *In re J.F.T.*, 320 A.2d 322, 325 (D.C. 1974), we gave weight to original purchase price as "remov[ing] from the area of speculation" the proof of value when the stolen property (1) had been recently purchased at a price well in excess of $100, (2) was in "mint condition" at the time of the theft, and (3) was not subject to "prompt depreciation or obsolescence." *Id.* We soon termed our *J.F.T.* decision, without explanation, an "exception" to the general stringent rule, see *Williams v. United States*, 376 A.2d 442, 444 (D.C.1977), and tended to disregard or marginalize probative force in purchase price evidence that did not meet the test of *J.F.T. See e.g., Chappelle v. United States*, 736 A.2d 212, 215–216 (D.C.1999) (stating factors to be consid-

---

1. For examples of additional cases, each using slightly different language to describe our proof of value requirement, see *Terrell v. United States*, 721 A.2d 957, 959 (D.C.1998) ("value ... must be proved with precision") (citation omitted); *Malloy v. United States*, 483 A.2d 678, 680 (D.C.1984) (observing "strict"

rule that requires proof "sufficient to eliminate the possibility of ... surmise or conjecture") (citations omitted); *Boone v. United States*, 296 A.2d 449, 450 (D.C.1972) ("strict rule"). *Thweatt*, in a footnote, used the phrase "this strict rule." 140 U.S.App.D.C. at 127 n. 10, 433 F.2d at 1233 n. 10.

ered when owner testifies as to purchase price); *Zellers,* 682 A.2d at 1121 (fact that television set cost $640 would not prove that value twenty-one months later exceeded $250, even if in "almost mint" condition); *Malloy, supra* at note 1, 483 A.2d at 680–81 (rejecting purchase price alone as grounds for departure from our "strict" rule of proof).[2]

The underlying purpose of the proof of value requirement was and has always been to ensure that the jury's verdict was not "'based on surmise or conjecture' about the value of the property." *Zellers,* 682 A.2d at 1121 (quoting *Boone,* 296 A.2d at 450).[3] But such a consideration is not unique to the element of value; it applies across the board. *See, e.g., Curley v. United States,* 81 U.S.App. D.C. 389, 160 F.2d 229, 233 (1947), *cited with approval in Jackson v. Virginia,* 443 U.S. 307, 317–318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ("The jury may not be permitted to conjecture merely, or to conclude upon pure speculation or from passion, prejudice, or sympathy. The critical point in this boundary is the existence or non-existence of a reasonable doubt as to guilt."). The principle is universal that a reviewing court will affirm a verdict only when the evidence presented can form the basis for permissible inferences and not mere speculation. *See, e.g., Rivas,* 783 A.2d at 134; *Curry v. United States,* 520 A.2d 255, 263 (D.C.1987); *Smothers v. United States,* 403 A.2d 306, 312 (D.C.1979).

It is important to keep in mind precisely what must be proven when the issue is whether a statutory value amount has been exceeded in a prosecution for first degree theft and similar criminal offenses. The matter to be determined is not the absolute value of the items stolen, as would be the case in, for example, a condemnation action. Rather, the proof must only show that the value, whatever it may be in absolute terms, exceeded the statutory minimum. To be sure, when the proof indicates a value nearing that minimum, such proof may need to be offered with greater precision. In that sense the use of phrases like "strict rule" can be under-

**2.** We note that the *Malloy* dissent would have found the purchase price testimony by the complainant and her daughter, coupled with the sheer number of items named in the indictment, to be sufficient proof of value. 483 A.2d at 681–682 (Nebeker, J., dissenting in part).

**3.** The uniform standard applied to proof of value seems generally in step with those of other jurisdictions which appear to require no greater strictness than proof beyond a reasonable doubt. *See, e.g., United States v. DiGilio,* 538 F.2d 972, 979 (3d Cir.1976) (reciting that "the government bears the burden of proving beyond a reasonable doubt that the misappropriated property has the requisite value."); *State v. Gartner,* 263 Neb. 153, 638 N.W.2d 849, 859 (2002) ("[t]he State must prove, beyond a reasonable doubt the value of the property that is the subject of the theft charge."). *See also Cooper v. State,* 43 Ala. App. 385, 191 So.2d 224, 229 (1966) (cited in *Thweatt,* 140 U.S.App. D.C. at 127 n. 10, 433 F.2d at 1233 n. 10, as embodying the "strict"

proof of value rule, but reversing on the grounds that the government had elicited at trial no proof whatever). Concerning the question of how much weight to give evidence of the purchase price of a stolen item, the government acknowledges in its petition for rehearing [footnote 1] that courts across jurisdictions have held that purchase price, standing alone, is insufficient to establish value, especially of an older item, and have spoken of a strict rule. *See, e.g.,* LaFave, Criminal Law, § 8.4(b) (3d ed. 2000) ("Property value is not necessarily its cost; rather it is its market value at the time and place stolen, if there is a market for it"). *See also* 52A C.J.S. Larceny § 133(b) (1968 & Supp. 2003); 3 Wharton's Criminal Law § 345 & n. 21 (15th ed. 1995). This general rule, however, is not axiomatic. *See, e.g., People v. Todaro,* 14 Ill.2d 594, 153 N.E.2d 563, 567 (1958) (allowing proof of purchase price so long as it is coupled with some other proof); *People v. Harris,* 77 Mich. 568, 43 N.W. 1060, 1060 (1889) (holding purchase price near to time of theft alone sufficient to convict).

stood to have highlighted the need for the government in such circumstances to take special care in presenting proof beyond conjecture or speculation on an element—value—integral to the seriousness of the offense and potential punishment. *Compare, e.g.,* D.C.Code § 22–3212(a) (2001) (punishing first-degree theft by imprisonment for up to ten years) *with* D.C.Code § 22–3212(b) (2001) (punishing second-degree theft by imprisonment not to exceed 180 days). The ultimate evidentiary test of sufficiency, however, remains the same.[4]

 A jury, as a result, should not be precluded from drawing reasonable inferences from an item's purchase date and price when determining, on the totality of facts and circumstances, whether the government has met its burden of proving value under the theft statute. In another criminal context, the Supreme Court has recognized "the saving grace of common sense." *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955). *See also Hill v. Metropolitan African Methodist Episcopal Church,* 779 A.2d 906, 909 (D.C.2001) ("jury ... surely could use its *common sense* and everyday experience to infer reasonably from the evidence"); CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.04 (4th ed. 2002) ("When you consider the evidence, you are permitted to draw, from the facts which you find have been proven, such reasonable inferences as you feel are justified in the light of your experience."). Indeed, in the proof of value context itself, we have sustained a conviction for grand larceny in appropriate circumstances when the key evidence of the value of the items

stolen was the owner's testimony and have rejected the argument that expert testimony was required to establish market value. *See, e.g., Ross v. United States,* 520 A.2d 1064, 1066 n. 5 (D.C.1987); *In re R.D.J.,* 348 A.2d 301, 304 (D.C.1975); *Saunders v. United States,* 317 A.2d 867, 868 (D.C.1974), *cited with approval in Williams v. United States,* 805 A.2d 919, 928 (D.C.2002). *Cf. District of Columbia v. Shannon,* 696 A.2d 1359, 1365 (D.C. 1997) (internal quotation marks omitted) (noting that when a matter falls "within the realm of common knowledge and everyday experience, a plaintiff will not need expert testimony to establish a standard and a deviation"); *Zellers,* 682 A.2d at 1120 (recognizing that the determination of fair market value is within the understanding of the average juror). In sum and consistent with the historical origins of our rule, the government need not prove value in first degree theft and like offenses with any "strictness" or "precision" greater than any other element of the offense, and the question of sufficiency will be reviewed under the same uniform standard that applies across the board in criminal cases.

**II.**

 We now apply this uniform standard to appellant's case. In doing so, we affirm his conviction of first-degree theft, with its requirement that the stolen property have a total value of $250 or more. D.C.Code § 22–3212(a) (2001).

While our focus herein remains on the evidence of value, we first recount the

---

4. *See Zellers,* 682 A.2d at 1120 ("there are different methods of proving value, and no one method is preferred over others"). A reasonable effort should be made to prove value beyond all peradventure so as to eliminate any sufficiency issue from the case. Although somewhat thin testimony may not be fatal to efforts to secure a conviction for first degree theft, eliciting an unquestionably sufficient amount of evidence on value greatly aids both fact-finders at trial and this court on appeal in deciding whether proof of value has been established. *See, e.g., Malloy,* 483 A.2d at 682 (noting, on a similar record, that "the testimony of value was not elicited in an ideal way") (Nebeker, J., dissenting in part).

general setting of the offense.[5] From January until March 1999, appellant and one Mansoor Salahuddin ("Salahuddin") shared a two-bedroom apartment on Xenia Street in the District of Columbia. Prior to sharing the apartment with appellant, from November 1998 until sometime in January 1999, Salahuddin lived alone in the apartment, which was his principal dwelling place. At approximately 4:00 a.m. on Saturday, March 20, 1999, Salahuddin returned home to the apartment with his girlfriend Tess Jones ("Jones").[6] On their return, they found appellant in the apartment. After a brief conversation, appellant and Salahuddin left the apartment together but got into separate vehicles. Appellant returned about twenty minutes later, informed Jones that Salahuddin indicated to appellant that he'd be right back, and then left the apartment again. Salahuddin never returned. He was found shot dead and lying in the road by a motorist at approximately 4:12 a.m. Jones waited until 1:30 p.m. on Saturday before returning to her home, where, at around 6:00 p.m., she learned of Salahuddin's death.

Two government witnesses testified that on Sunday, March 21, appellant was moving furniture, clothes and other items out of the apartment with the help of one or two other people. One of the witnesses, who identified himself as one of the people who had assisted appellant at that time, testified that he loaded a dozen or so boxes, some of which were "big," into his own pick-up truck and that he and appellant, in another vehicle, traveled to appellant's

mother's house where they unloaded the boxes.

Jones returned to Salahuddin's apartment around 2 p.m. that Sunday. Although the apartment had been fully furnished when she left the previous afternoon, it was now considerably stripped. All of Salahuddin's clothes, shoes, and pictures were gone. His closet had been cleared out, along with his statuettes and the carpets on his bathroom floor. At that time, Salahuddin's living room furniture, dining room furniture, bed, television, VCR, and stereo still remained in the apartment. However, when Jones returned to visit the apartment a second time on Monday around 11 a.m. with two detectives, these items and everything else in the apartment were gone. They found the apartment entirely empty.

Jones gave the detectives a detailed list of Salahuddin's missing property. Thereafter, two search warrants were executed for Salahuddin's property. The first warrant was executed at the home of appellant's girl friend. There, the detectives recovered a black couch, a stereo, several CDs, a mattress, and a box spring. A second warrant was executed at appellant's mother's house, where the detectives found a black futon, a television, a VCR, two black musical statuettes, a green Koran with gold letters, a prayer carpet, a floor lamp, a coffee table, and two end tables. Jones identified all these items as Salahuddin's property.

Jones then gave further testimony about the purchase price, age, and condition of

---

**5.** Appellant was tried for first degree murder and related offenses, including the first degree theft charge at issue here. The jury acquitted him on all charges, except for theft.

**6.** Jones testified that she had known Salahuddin since they were in sixth grade together, that Salahuddin had fathered her daughter in

February 1999, that she visited his Xenia Street apartment every weekend, and that she and Salahuddin had planned to move into a new apartment together on March 27, 1999. Jones, by virtue of her close relationship to Salahuddin, demonstrated an intimate familiarity with his daily affairs.

certain items of the purloined property. This established that the stolen items included, as only a part of the entirety of Salahuddin's property taken by appellant: (1) a glass and black metal, brass-like dining room table with four black, brass dining room chairs, purchased at Discount Mart two months before the theft for $189, (2) a black marble coffee table and two black marble end tables, which were about four months old, and purchased at Discount Mart for $119, (3) a black futon and mattress, both about four months old, that together were purchased at Family Furniture Center for $278, (4) a lamp, about four months old, that was purchased at Discount Mart for $19.99, (5) an AIWA stereo and two speakers, about 18 months old, that were purchased at Circuit City for $189, and (6) a black sofa/sleeper in "good condition."

Before the jury, thus, was specific information about standard items of household furniture, almost brand-new, with a total purchase price exceeding $600. Even a fifty per cent drop in the value of these sturdy items over the four-month period between purchase and theft would render them sufficient, standing alone, to exceed the minimum value needed to convict for first-degree theft.

But, of course, these furniture items did not stand alone. The AIWA stereo, for which Jones provided the original purchase price, also had been stolen. Jones also testified about a black sofa/sleeper, which she specifically described as being in good condition. And, testimony was presented about a myriad of other stolen items, including but not limited to a 13-inch color television, a four-head VCR/VHS tape player, Salahuddin's bed, all his clothes and shoes, all the pictures from the apartment walls, and two Chinese rugs. These items, as with almost all of the stolen property, were of a general type familiar to ordinary jurors.

The evidence here, in fact, might be viewed as greater than in our more recent prior cases in which we found value to be insufficient under our so-called strict rule. For example, in our most recent holding to this effect, a telephone bought two weeks prior to the subject theft carried a purchase price of $249, a dollar below the statutory minimum. As we phrased the relevant issue, "we must determine, then, whether the price of shipping and handling [$7.50] and the warranty contract [$54.58] can be included in determining the value of the chattel," thereby implicitly taking the telephone, although now second-hand, at its original purchase price. *Chappelle*, 736 A.2d at 215. In another relatively recent case, we were unwilling to find sufficient proof of value in a nearly two-year-old television set with an original purchase price of $640 and a three-year-old microwave oven with an original purchase price of $99. *Zellers*, 682 A.2d at 1121. Conviction in that case then turned on approximately 40 compact discs that were bought for $15 each during the period of a year or so preceding the theft. *Id.* We expressed concern, however, that the government failed to present evidence as to the contents of the compact discs, which we observed could just as easily have been recordings "of musical ephemera sung by yesterday's rock star *du jour*" and, therefore, presumably valueless or nearly so. *Id.* at 1121–22. In contrast to our above-cited decisions finding insufficient proof of value, we have, within the last decade or so, found sufficient proof of value in a case in which the only evidence relating to the stolen Ford four-door Taurus sedan automobile was that it was of "recent vintage" and fully operable, together with photographs showing that it was apparently in good condition. *Curtis v. United States*, 611 A.2d 51, 52 (D.C.1992).

For the foregoing reasons, we are quite satisfied that, on the totality of the evi-

dence presented, and without resort to the forbidden surmise or conjecture, a reasonable jury, while not certain of the precise sum value of the stolen property here, could conclude that the sum exceeded the statutory minimum of $250. We reiterate that "the government is not required to negate every possible inference of innocence before an accused may be found guilty of an offense beyond a reasonable doubt. It is only where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt that this court can reverse a conviction." *Smith,* 809 A.2d at 1221 (citations and internal quotation marks omitted). That is not the case here.

Accordingly, the judgment of conviction appealed from is

*Affirmed.*