**John FOREMAN, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 07–CF–1130.**

District of Columbia Court of Appeals.

Argued Dec. 11, 2009.

Decided Feb. 4, 2010.

Christine A. Monta, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

Sarah Chasson, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese III, Frederic Gallun, and John Mannarino, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE–RIGSBY and THOMPSON, Associate Judges, and FARRELL, Senior Judge.

FARRELL, Senior Judge:

■ Appellant was charged with, among other things, armed robbery and possession of a firearm during a crime of violence, both arising from an incident in

which, according to the indictment, he forcibly took an iPod from Marcus Curry while brandishing a handgun. The jury acquitted him of these charges but returned a guilty verdict on first-degree theft and hung on unarmed robbery, both of which had been submitted to it as lesser-included offenses of the armed robbery.[1]

■ We hold that the evidence was insufficient to permit appellant's conviction of first-degree theft, because the government presented no evidence from which a rational juror could infer that the combined value of the stolen iPod and its contents exceeded $250. *See generally Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Although the proof requirement for theft in the first degree that "the value of the property obtained" was "$250 or more" appears in a penalty statute, § 22–3212(a), not in the definition of "theft," § 22–3211, our decisions leave no doubt that the issue of value distinguishing first degree (or felony) theft from second degree (or misdemeanor) theft, *see id.* § 22–3212(b), implicates an element of the offense and must be submitted to the trier of fact. *See, e.g., Hebron v. United States*, 837 A.2d 910 (D.C.2003) (en banc) (*Hebron II*) (*passim;* presupposing issue to be what evidence suffices to permit trier of fact to find "value" beyond a reasonable doubt). Our cases have further established that, "when the proof [at trial] indicates a value nearing [the] minimum" separating felony from

---

1. Appellant contends that it was plain error for the judge to instruct on first degree (or felony) theft (D.C.Code §§ 22–3211(b), – 3212(a)), because that crime is not a lesser-included offense of armed robbery and he had not been indicted for it. The government, while agreeing "that felony theft is not a lesser-included offense of armed robbery" (Br. for Appellee at 10), counters, among other things, that this error could not have been

"obvious" to the trial judge, *see United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), in light of decisions such as *Norris v. United States*, 585 A.2d 1372, 1373 (D.C.1991), and *United States v. Dixon*, 152 U.S.App. D.C. 200, 202, 469 F.2d 940, 942 (1972), so that appellant's claim fails the plain error test. Our disposition of the appeal makes it unnecessary to resolve that issue.

misdemeanor theft, "such proof may need to be offered with greater precision" than when the issue is not a close one. *Id.* at 913. "In that sense," we explained in *Hebron II*,

> the use [by past decisions] of phrases like "strict rule" can be understood to have highlighted the need for the government in such circumstances to take special care in presenting proof beyond conjecture or speculation on an element—value—integral to the seriousness of the offense and potential punishment.

*Id.* at 913–14.

Here, the government's proof of value exceeding the statutory amount of $250 was insufficient to rule out a verdict based on "surmise or conjecture." *Id.* at 913 (quoting *Zellers v. United States*, 682 A.2d 1118, 1121 (D.C.1996)). Perhaps understandably, in a case where the parties disagreed most strongly on whether appellant had forcibly assaulted (*i.e.*, robbed) Curry, and if so whether he had used a firearm, the evidence on the value of the iPod consisted of sparse testimony by Curry and his mother unelucidated by other evidence. Marcus Curry stated that his mother had bought the iPod for him in December 2006 as a Christmas gift (*i.e.*, some four months before the April 12, 2007 theft), and that he believed she had paid $300 for it. But Mrs. Curry corrected this by stating that she had paid "about $250" for the iPod, though with "tax and shipping it came up to about $300." Marcus Curry further testified that he had "movies and pictures of [himself] and [his] friends and . . . family" on the iPod, and had downloaded "about four hundred or more" songs onto the device. While he had "had to pay" to put the movies on the iPod, "some of [the]

songs" were "free downloaded songs" and "some of them you had to pay for." That was the sum of the value evidence presented to the jury.

■■ Value in this context means the "fair market value" of the property, *Eldridge v. United States*, 492 A.2d 879, 882 (D.C.1985), defined as the "price at which a willing seller and a willing buyer will trade." *Williams v. United States*, 376 A.2d 442, 444 (D.C.1977) (per curiam). Significantly, the determination of market value starts with the "base price" and excludes "ancillary" costs such as shipping and handling, *Chappelle v. United States*, 736 A.2d 212, 216 (D.C.1999), as well as taxes. *See, e.g., Russell v. State*, 367 Ark. 557, 242 S.W.3d 265, 268 (2006) ("[T]he jurisdictions that have considered the issue have generally concluded that a sales tax is not truly a component of the value of a good or service."); *People v. Medjdoubi*, 173 Misc.2d 259, 661 N.Y.S.2d 502, 506 (N.Y.Sup.Ct.1997). Thus, we set aside Mrs. Curry's mention of the amounts in excess of $250 that she paid for the iPod, which left the value of the device at the time of purchase at exactly the statutory dividing line. Our decisions have also made clear, however, that electronic products of this nature have a tendency to depreciate rapidly as technology changes and old versions are replaced. *See Malloy v. United States*, 483 A.2d 678, 680 n. 2 (D.C.1984) (describing television and radio as "items subject to fairly prompt depreciation"); *Hebron v. United States*, 804 A.2d 270, 272 (D.C.2002) (per curiam) (*Hebron I*) (describing stereo as "subject to prompt depreciation or obsolescence").[2] Thus, since no contrary evidence was presented that iPods retain the market value reflected in their purchase price, only specu-

---

**2.** Although the holdings of these cases were overturned by the decision in *Hebron II* cited in the text, no disapproval was expressed

there about their commonsense observations regarding the tendency of electronic products to depreciate rapidly.

lation allowed the jury to infer that Curry's device, by itself, was still worth $250 some four months after it was bought.

The government appears to agree up to this point, because it places nearly all of its reliance on the presumed market value of the movies and songs that Curry downloaded onto the iPod. The word "presumed" here is key, however, because Curry did not state or estimate—as he was not asked—how much he had paid for the downloads, individually or altogether; he offered no opinion on what such items generally cost; and indeed, as to the "four hundred or more" songs, he did not say how many he had paid for at all rather than downloading them "free." The absence of independent proof of the usual cost of iPod downloads might not be fatal, since "[t]he market value of a chattel ... may be established by the testimony of its non-expert owner," *Zellers*, 682 A.2d at 1120 (citation omitted); but Curry's testimony merely that he had paid *something* for an undetermined portion of his songs and for his movies did not allow an inference beyond a reasonable doubt that the iPod *and* its contents were worth more than the depreciated value of the device alone, which had cost the bare statutory minimum when purchased.[3]

This conclusion does not change when we factor in a jury's acknowledged right to bring its own experiences to bear on the evaluation of evidence. *See* Criminal Jury Instruction for the District of Columbia No. 2.04 (4th ed. 2008) ("When you consider the evidence, you are permitted to draw, from the facts that you find have

been proven, such reasonable inferences as you feel are justified in the light of your experience."). There may well be circumstances where the intrinsic value of an object (say, a new high-priced automobile) is so much a part of common knowledge that no further proof of value exceeding $250 is needed. But that is not this case, given Curry's admission that he had paid nothing for "some" of the songs. Permitting jurors here to rely on their own experience of what iPod downloads cost would not be a proper drawing of inferences "from the facts ... proven in light of [their] own experience"; rather, it would substitute for a failure of proof on the point.

Consequently, appellant's conviction for theft in the first degree must be vacated for insufficient evidence. He asks us to remand with directions for the trial court to enter judgment on the lesser included offense of theft in the second degree, but the record does not tell us—nor could the parties at oral argument—whether the charge of robbery on which the jury hung is still pending and so subject to retrial. We leave these matters to be determined on remand.

*Reversed and remanded with directions to enter judgment of acquittal on theft in the first degree.*

---

3. Appellant points also to the fact that Curry did not identify the names or artists of any of the songs and movies on the iPod, relying on this court's observation in *Zellers*, 682 A.2d at 1121, that "the value of any ... musical recording depends in large part on what is recorded.... [A] CD containing a collection of arias sung by Enrico Caruso ... may be of

greater value than an album of musical ephemera sung by yesterday's rock star *du jour.*" Of course, depending on the relevant market place, the opposite of this conclusion may also be true, and because it is not obvious to us what an identification of Curry's songs would have contributed to the issue of value, we leave that point aside.